UNITED STATES of America, Appellee,

v.

**Renard BARONE, Defendant–Appellant.**

**No. 815, Docket 89–1516.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 21, 1990.

Decided Aug. 31, 1990.

H. Elliot Wales, New York City, for defendant-appellant.

Michael L. Tabak, Asst. U.S. Atty., Southern District of New York City (Otto G. Obermaier, U.S. Atty., David E. Brodsky, Asst. U.S. Atty., Southern District of New York City, of counsel), for appellee.

Before FEINBERG, CARDAMONE, and MINER, Circuit Judges.

CARDAMONE, Circuit Judge:

Renard Barone appeals from a September 25, 1989 judgment of conviction entered after a four-day trial in the United States District Court for the Southern District of New York before Chief Judge Brieant and a jury. Barone was convicted on one count of tax evasion, in violation of 26 U.S.C. § 7201 (1988), and two counts of perjury before a federal grand jury, in violation of 18 U.S.C. § 1623 (1988). On this appeal appellant challenges his conviction on the grounds that the district court erred in allowing the government to admit into evidence a tape recording of a conversation between him and a government informant without presenting the informant as a witness at trial. Barone also contends that the district court erred in adding two points for two groups of offenses under § 3D1.4 of the sentencing guidelines and abused its discretion in departing upwards from the applicable guidelines' range.

## FACTS

Appellant is an attorney and former part-time local judge in Tuxedo, New York. In February 1987 he was approached by Frank Sacco, a dumpsite operator, Anthony Spadavecchia, the maintenance supervisor for the Ramapo Land Company, and Rudolph Frassinelli, the Town of Tuxedo Building Inspector. Spadavecchia and Frassinelli, acting as intermediaries, introduced Sacco to Barone who—with Sarkis Khourouzian—owned a 12–acre parcel of

undeveloped property in Tuxedo. Sacco wanted to lease this site for a landfill. The government's evidence at trial showed that Sacco in a preliminary discussion with Barone agreed to pay $5,000 per week to use the property as a landfill site. Khourouzian did not participate in the discussion but relied upon the opinion and representations of Barone, his attorney. At this meeting it was agreed that each week Sacco would pay Barone $500 by check and $4,500 in cash. Barone would tell Khourouzian that Sacco was only paying $500 for use of the property and divide that amount with Khourouzian. Barone would then split the covert cash payment of $4,500 with Frassinelli and Spadavecchia.

In March 1987 Sacco began his dumpsite operation on the Barone/Khourouzian property, and made the agreed weekly payments by check and in cash to Barone, who divided these sums as outlined above. The landfill operation created a terrible stench that led to protests from the residents of Tuxedo, and prompted the New York State Department of Environmental Conservation (DEC) to investigate. Six months after the landfill operation began, the site was closed by state court order. It apparently caused extensive environmental damage that will be costly to remedy.

Barone did not report the more than $50,000 in cash that he received as his share of the weekly cash payments from Sacco on his 1987 tax return. On July 13, 1988 he appeared before a federal grand jury investigating Sacco. Upon being directly questioned whether he had received any cash payments other than the $500 weekly checks from Sacco, he repeatedly denied receiving such payments. He appeared before the same grand jury on August 5 and made the same denial.

On March 2, 1989 Barone visited Sacco, who was incarcerated at the Federal Correctional Institution in Otisville, New York while awaiting trial on charges relating to his operation of the dump. Unbeknownst to Barone, Sacco was cooperating with the government and had consented to have his conversation with Barone tape recorded. At the meeting Sacco said that he was going to inform the government about the cash payments. After initially denying knowledge of such payments, Barone became agitated, admitted that he had committed perjury before the grand jury, and pleaded with Sacco not to reveal them.

Before trial, the government informed the defense and the district court that because Sacco was suspected of having committed a murder, it did not intend to call him as a witness. Instead the government introduced a tape recording of the March 2 prison conversation between Sacco and Barone through the testimony of the Federal Bureau of Investigation agent who recorded it. The government also produced, *inter alia*, the testimonies of Spadavecchia and Frassinelli, both of whom testified as to the scheme they had with Barone to divide the $4,500 weekly cash payments from Sacco.

## DISCUSSION

### A. *The Tape Recording*

Appellant raises three issues on appeal. One concerns the receipt into evidence of the secretly recorded conversation he had with Sacco; the second relates to the sentencing court's addition of two points under § 3D1.4 of the guidelines; and the third challenges the court's upward departure from the guidelines' range following his conviction for tax evasion and perjury.

We turn first to the challenge to his conviction on the ground that the government should not have been allowed to introduce the tape-recorded conversation without producing Sacco as a witness. Appellant contends that the introduction of the tape recording was erroneous for a number of reasons: it was made without his being aware of it and without a court order; it was not properly authenticated inasmuch as the government failed to call Sacco as a witness despite his availability; and the failure to call Sacco deprived Barone of his Sixth Amendment right to cross-examine Sacco regarding the statements he made on the recording, their context, and prior conversations between them. For the reasons that follow, we find all of these objections without merit.

■ Because the government made the recording with the consent and cooperation of Sacco there was no need to inform Barone or obtain a court order. 18 U.S.C. § 2511(2)(c) (1988); *United States v. White*, 401 U.S. 745, 748–54, 91 S.Ct. 1122, 1124–27, 28 L.Ed.2d 453 (1971); *Lopez v. United States*, 373 U.S. 427, 437–40, 83 S.Ct. 1381, 1387–89, 10 L.Ed.2d 462 (1963); *United States v. Coven*, 662 F.2d 162, 173–74 (2d Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982). Further, the government is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it. *See United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). A proper foundation for the Barone/Sacco recording was therefore laid through the testimony of the agent who operated the recording device.

■ With respect to Barone's Sixth Amendment contention, the accused's right to confront and cross-examine witnesses is not violated when the government fails to produce as a witness at trial an informant who is heard in a tape-recorded conversation with the defendant. So long as the informant's recorded statements are not presented for the truth of the matter asserted, but only to establish a context for the recorded statements of the accused, the defendant's Sixth Amendment rights are not transgressed. *See, e.g., United States v. Stratton*, 779 F.2d 820, 830 (2d Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986); *United States v. Murray*, 618 F.2d 892, 900 (2d Cir.1980).

■ Chief Judge Brieant instructed the jury that the statements made by Sacco on the recording were not to be considered as evidence, but were only to be used to assist the jury in understanding Barone's responses. Moreover, Sacco was available and could have been called as a defense witness; appellant could have requested, in that case, to examine Sacco as a hostile witness. Appellant chose not to call Sacco, and the district court properly gave a miss-ing witness instruction to the jury regarding both the government's and defendant's failure to produce him. *See United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir.1988). Thus, there was no denial of Barone's Sixth Amendment right to confront Sacco.

### B. *Sentencing*

Barone challenges the district court's calculation of the total offense level under the guidelines as well as its upward departure from the guidelines' range. Although the former argument is without merit we must remand for resentencing on the latter ground.

#### 1. *Total Offense Level*

■ In calculating the total offense level of 14, the district court adhered to the analysis found in the presentence report prepared by the Probation Office. The presentence report divided the offense conduct into two groups: the first group included counts two and three (perjury), and the second comprised count one (tax evasion). *See* United States Sentencing Commission, *Guidelines Manual* § 3D1.2 (Nov. 1989) (U.S.S.G.) ("All counts involving substantially the same harm shall be grouped together into a single Group."). Then, pursuant to U.S.S.G. § 3D1.3, the report determined the offense level of the first group to be 12 and the offense level of the second group to be 10. Finally, under § 3D1.4 the report calculated the total offense level of 14 by "taking the offense level applicable to the Group with the highest offense level"—here 12—and adding two levels. The two-level increase resulted from a two unit penalty; one unit given for "the Group with the highest offense level" and one unit given for the other Group that was "from 1 to 4 levels less serious." U.S.S.G. § 3D1.4(a).

Barone's challenge to the separation of the offense conduct into two groups because "the tax evasion and perjury [counts] were really one and the same" is unpersuasive. The laws prohibiting perjury and tax evasion protect wholly disparate interests and involve distinct harms to society. *Cf. United States v. Won Tae Kim*, 896 F.2d

678, 687 (2d Cir.1990). The district court properly computed therefore the total offense level by dividing the offense conduct into two groups.

### 2. *Upward Departure*

We turn now to Barone's contention that in departing upwards from the sentencing guidelines to impose a sentence of 36 months' incarceration the district court abused its discretion. The sentencing guidelines' imprisonment range is 15 to 21 months for an offense level of 14. The presentence report cited Barone's upstanding status in his community and his unmarred personal history as a World War II veteran, husband, father, and community leader. As a final comment, the report stated: "There is no aggravating or mitigating circumstance concerning the offenses or the offender that would warrant the departure from the prescribed guideline range." Nevertheless, the district court departed from the guidelines and imposed a sentence of 36 months' incarceration after finding

> that the Sentencing Commission in dealing with the abstract crime of false declarations under oath, the abstract crime of evasion of taxes did not perceive the totality of this situation ... including the duty which [Barone] owed to the community as a public official and lawyer, the unnecessary burdens placed on the state and community by the dump, particularly the delay in dealing officially with the conditions of the dump, which delay was enhanced ... by his perjury, the perjury involving a respected community leader, an elected judge and a lawyer.

A district court may depart from the applicable sentencing guidelines' range when the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (1988); *see* U.S.S.G. § 5K2.0. Since the sentencing judge must state "the specific reason" for departing from the guidelines range, 18 U.S.C. § 3553(c)(2), in reviewing whether departure was justified we must examine the sentencing court's stated reasons for departure, rather than any additional justifications offered by the government either before or after sentencing.

■■■ In determining whether aggravating circumstances exist to support an upward departure, district courts are granted wide discretion. *United States v. Palta*, 880 F.2d 636, 639 (2d Cir.1989); *United States v. Sturgis*, 869 F.2d 54, 56 (2d Cir. 1989). When reviewing a departure from the guidelines, the touchstone we keep in mind is that a district court must have some reasonable flexibility in determining what sentence to impose. *See Sturgis*, 869 F.2d at 57. Although the factual findings upon which the district court bases its decision to depart are subject to the clearly erroneous standard, we apply *de novo* review to issues of law. *See United States v. Lara*, 905 F.2d 599, 602 (2d Cir.1990). Issues of law include the threshold question under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 of whether "an aggravating or mitigating circumstance ... [was not] adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." *Id.*

■■ The district court premised the upward departure upon its finding that the Sentencing Commission did not adequately consider the "totality" of the circumstances present, citing the duty Barone owed to his community as a local judge and lawyer, the fact that in spite of his status as a community leader he gave perjured testimony, and the delay such testimony caused the State's efforts to investigate and clean up the dumpsite. These circumstances are not grounds for an upward departure.

The Sentencing Commission considered and rejected the sentencing court's reliance upon a defendant's socio-economic status as a factor at sentencing. *See* U.S.S.G. § 5H1.10. While the Commission did provide that a defendant's education may in some instances be relevant, it limited consideration of this factor only to those cases where a defendant has "misused special training in perpetrating his crime." *United States v. Burch*, 873 F.2d 765, 769 (5th

Cir.1989); U.S.S.G. § 5H1.2. Here, the record does not show that Barone used his public office or his legal training to facilitate the crimes of perjury or tax evasion. No findings support the conclusion that he might have used his public office to facilitate the operation of the landfill or that his involvement in the operation of the dumpsite was criminal. Hence, Barone's position in the community, his profession, and the fact that he had held public office are not factors in this case warranting upward departure. *See* U.S.S.G. § 5H1.6.

As for the third circumstance cited by the district court—"the delay in dealing officially with the conditions of the dump" caused by Barone's perjury—again, the district court erred in relying upon this factor to depart from the guidelines. The government argues that such reliance is valid since the guidelines authorize an upward departure when the defendant's conduct significantly disrupts a government function, U.S.S.G. § 5K2.7, and when a defendant's conduct has either caused "property damage or loss not taken into account within the guidelines," *id.* § 5K2.5, or endangered the "public health," *id.* § 5K2.14. Reliance on any of these sections is unavailing in this case.

■■■ Section 5K2.7 states that the court may increase a sentence above the guideline range "[i]f the defendant's *conduct* resulted in a significant disruption of a governmental function" (emphasis added). Yet, the section states further that "[d]eparture from the guidelines ordinarily would not be justified when the offense of conviction is an offense such as bribery or obstruction of justice; in such cases interference with a governmental function is inherent in the offense...." As a consequence, the government cannot argue that § 5K2.7 justifies a departure based upon Barone's perjury in front of the grand jury, for interference with a government function is inherent in that offense. As for other "conduct" Barone may have engaged in that thwarted the State's attempts to investigate the landfill, any such actions, if they occurred, are not related to the crimes for which Barone has been convicted, and

we limit the conduct considered by a district court in departing from the guidelines to acts related to the offenses charged. *See Kim,* 896 F.2d at 684 ("[W]ith respect to acts of misconduct not resulting in conviction, the Commission intended to preclude departures for acts bearing no relationship to the offense of conviction....").

■■■ Two other sections are cited by the government—§ 5K2.5 (when "the offense caused property damage or loss not taken into account") and § 5K2.14 (when "national security, public health, or safety was significantly endangered")—to justify upward departure in sentencing Barone. These sections require a closer nexus than that which exists here between the offenses for which a defendant has been charged and the conduct which has allegedly caused property damage or a threat to the public welfare. Barone has not been charged with any crimes stemming from the operation or effects of the dumpsite. He was charged only with filing a fraudulent tax return and with perjury relating to how much money he had actually received as rent for the property Sacco used for the dump, and the tax evasion and perjury occurred many months after the dumpsite was closed. There is no evidence that Barone's perjury regarding rent impeded the State's investigation into the environmental problems caused by the landfill.

As to Barone's liability as an owner of the dumpsite—or for his alleged involvement in continuing the operation of the site—the sentencing court stated that "the facts concerning the dump are still unclear." As highlighted by this assessment, there is insufficient evidence in the record to support a factual finding that Barone was responsible for substantial property damage or endangering the health of the community and we must reverse such a finding as clearly erroneous. *See United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 182 (2d Cir.1990) (due process requires that disputed sentencing factors be proved by preponderance of the evidence), *petition for cert. filed,* No. 89–7869 (June 26, 1990); *United States v. Rivalta,* 892 F.2d 223, 230 (2d Cir.1989) (same). The upward depar-

ture from the guidelines' range of 15–21 months to a sentence of 36 months was accordingly improper as a matter of law.

## CONCLUSION

The judgment of conviction is affirmed and the case is remanded for resentencing in accordance with the sentencing guidelines.

FEINBERG, Circuit Judge, concurring in part and dissenting in part:

I concur in the decision of the majority to affirm the conviction and remand the case to the district court for resentencing in accordance with the Sentencing Guidelines. I disagree, however, with one of the majority's grounds for finding Chief Judge Brieant's upward departure from the Guidelines improper as a matter of law—namely, that it is impermissible per se to consider a defendant's status as a prominent holder of public office in deciding whether to depart from the Guidelines. Because I believe that such a rule is neither a necessary interpretation of the Guidelines nor sound public policy, I dissent on this issue.

I agree fully with the majority's analysis of appellant's first two claims concerning the propriety of introducing the tape-recording without producing Sacco as a witness and the district court's calculation of the total offense level. My disagreement arises from the majority's holding that the lower court erred as a matter of law in treating Barone's status as a former judge as a basis for making an upward departure from the Guidelines. The majority apparently believes that the Sentencing Commission considered and rejected the view that the holding of public office may be taken into account in deciding whether to depart from the Guidelines. The majority's view rests in part upon section 5H1.10 of the Guidelines, which unconditionally rejects reliance upon a defendant's socio-economic status in sentencing. Alternatively, the majority assumes that the holding of public office may sometimes be taken into account, but only if it involves misuse or abuse of one's special training or position in perpetrating the offense.

The majority thus appears to be endorsing the following rule: In making an upward departure a court may not take into account that a defendant is prominent in the community because the defendant holds (or held) public office, unless the office has been misused in connection with the crime. Assume, for example, that high public official A commits perjury before a grand jury or is guilty of tax evasion (and neither the perjury nor the tax evasion has anything to do with A's official duties), and citizen B commits the same offenses but does not hold public office. As I understand the majority's view, on this issue A and B are alike, that is, the sentencing court could never take A's public position into account in deciding to depart upwardly in imposing sentence. I do not believe that such a rule is either commendable on its own merits or required by the Guidelines.

Indeed, it is far from clear that § 5H1.10 applies to these considerations at all. Socio-economic status identifies one's standing with respect to fellow citizens in light of a set of discrete social and economic factors. The idea here is roughly that, with respect to these factors, whether one is worse off or better off, privileged or underprivileged, rich or poor, should not be relevant in determining one's sentence. The considerations invoked by the district court in Barone's case, however, do not have anything to do with whether Barone is worse off or better off than his fellow citizens. The focus of those considerations is rather that Barone enjoyed a special position of public confidence and trust in the community by virtue of his role as a former elected judge and a lawyer, a public trust that he directly betrayed by committing the offenses of perjury and tax evasion. It is this that the district judge had in mind when he referred to "the duty which [Barone] owed to the community as a public official and a lawyer." I see no persuasive reason why the district court should not be able to take this public harm into account.

I do not believe, then, that the majority is correct in assuming that the Sentencing Commission considered and rejected taking a defendant's status as a prominent former (or present) public official into account in sentencing. Moreover, if the Commission did take such a factor into account, it is at least as plausible to regard it as covered by section 5H1.6 of the Guidelines, which specifically concerns family ties and responsibilities and *community* ties. It is important to note that this section does not unconditionally exclude consideration of community ties as a factor in sentencing, but holds only that they are "not ordinarily relevant."

I should emphasize that I agree with the majority that the district court erred in justifying its upward departure by appealing to three other sections of the Guidelines, §§ 5K2.5, 5K2.7 and 5K2.14, which involve the assertion of a connection between the offense and disruption of a governmental function, damage to property or a threat to the public welfare. I therefore concur in remanding the case for resentencing in accordance with the Guidelines. However, for the reasons set forth above, I would allow the district judge in the course of that resentencing to take into account Barone's status as a prominent member of the community because of the office he formerly held. I do not suggest that an upward departure for that reason is called for. I suggest only that Judge Brieant is not prohibited from so exercising the significant discretion that the district judges still have under the Guidelines. See *United States v. Correa–Vargas*, 860 F.2d 35, 37 (2d Cir.1988).