UNITED STATES of America,
Appellant,

v.

Didier ALBA; John Gonzalez; Marizol
Vasquez, Defendants,

John Gonzalez, Defendant–Appellee.

No. 861, Docket 90–1523.

United States Court of Appeals,
Second Circuit.

Argued March 1, 1991.

Decided May 23, 1991.

Deborah R. Slater, Asst. U.S. Atty., D. Conn., Hartford, Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., New Haven, Conn., of counsel), for appellant, U.S.

Hubert Santos, Hartford, Conn. (Hope C. Seeley, Santos, Peck & Smith, P.C., Hartford, Conn., of counsel), for defendant–appellee, John Gonzalez.

Before OAKES, Chief Judge, and CARDAMONE and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

Defendant John Gonzalez pled guilty on April 18, 1990 to a charge of conspiracy to distribute and to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988). Responsibility for two kilograms of cocaine was attributed to him and, upon receiving two base offense level reductions for his minimal role in the offense and acceptance of responsibility, his Sentencing Guidelines range was 41–51 months. Relying on four separate factors, the district court then departed from that range and instead sentenced Gonzalez to six months in a halfway house, followed by two years of supervised release and a $50 fine.

On this appeal from the judgment entered July 17, 1990 in the District of Connecticut, Peter C. Dorsey, *Judge*, the United States challenges each of the four factors relied on by the sentencing court to depart downwardly from the appropriate Guidelines range; it also contends that the magnitude of the departure was unreasonable. For reasons to be discussed in a moment, we think the sentencing judge properly relied on two of the factors cited but that the other two he relied upon may not be appropriately considered as reasons for a downward departure. Because we cannot be certain the district court would have exercised its discretion and granted a downward departure to the same degree had it based its decision to depart solely on the valid factors, we remand for resentencing.

## BACKGROUND

Confidential information obtained in 1988 by the FBI and the Connecticut Statewide

Narcotics Taskforce indicated that Didier Alba, a co-defendant of Gonzalez, was an established cocaine supplier in the Willimantic, Connecticut area. In August 1989 Drug Enforcement Administration (DEA) agents were advised by a confidential informant that Alba was involved in multi-kilogram cocaine transactions in that locality. After a confidential informant made contact with Alba, he arranged a ten-kilogram purchase. During the course of the negotiations, co-defendant Marizol Vasquez, Alba's wife, was heard on two recorded phone conversations advising the informant that Alba had the money for four kilograms, that she and Alba sold two "motors" (kilograms) per week, and did not like to sell "transmissions" (ounces), leaving that to others. Plans were thereafter made to deliver the ten kilograms to Alba on September 21, 1989 at the Sheraton Hotel at Bradley International Airport in Windsor Locks, Connecticut. Alba agreed to pay $11,000 per kilogram and to tender $65,000 as a downpayment.

On September 21 when the informant advised Alba that he was at the Sheraton, Alba said he would join him there with the money. DEA agents then observed Alba driving away from his residence followed by another car driven by defendant Gonzalez. The two cars stopped at a gas station and the agents observed Gonzalez take a plastic bag from the trunk of his car and put it on the front seat.

From there Alba and Gonzalez drove directly to the Sheraton's underground parking area. Gonzalez remained in his vehicle, while Alba went to the hotel lobby. A few minutes later Alba returned to the garage with the informant and an undercover agent. He told Gonzalez to show them a box inside the bag, which he stated contained $60,000. Alba and the informant then returned to the lobby while the undercover agent and Gonzalez remained in the parking area. While waiting there, Gonzalez and the agent had a conversation which was recorded by the agent. In it Gonzalez discussed cocaine prices and other subjects relating to cocaine trafficking. Gonzalez later stated he adlibbed this conversation because he was afraid of the agent, whom he thought to be a member of organized crime. Defendant Alba was arrested in front of the Sheraton after he took possession of what he believed to be a package containing ten kilograms of cocaine. Gonzalez was arrested and searched shortly thereafter in the parking lot. The search revealed Gonzalez had in his possession a piece of paper with beeper numbers on it.

After his arrest, Gonzalez received and waived his *Miranda* rights. According to the government, the defendant then made a post-arrest statement in which he admitted he had held the $60,000 overnight, received $3,000 for his part in the deal, and been told by Alba to call the beeper numbers after they received the cocaine to make arrangements for its delivery. None of this information was contained in the presentence investigation report. A search of Gonzalez' home uncovered a black powder .36 caliber revolver, three boxes of 30–30 rifle cartridges, and $3,612 in cash.

## PROCEEDINGS BELOW

Gonzalez was indicted on one count for conspiring to distribute and to possess with the intent to distribute cocaine and on a second count for attempting to commit the same crimes. Upon his entering into an agreement under which he pled guilty to the conspiracy charge, the government dismissed the attempt count. The presentence report attributed two kilograms of cocaine to the defendant, resulting in an offense level of 28. It also recommended two reductions, one of four levels for minimal participation and one of two levels for acceptance of responsibility, which brought the offense level to 22. Since defendant had no prior arrests, his criminal history category was I. These combined under the Sentencing Table to produce a Guidelines range of 41–51 months. Although the amount of cocaine attributed to him was two kilograms, defendant reserved the right to argue that he was not aware of the quantity of narcotics involved.

At the April plea hearing Gonzalez testified that he did not know he was involved in a drug transaction until the contents of

the bag on the front seat of his car were shown to the informant and undercover agent. He declared that the money the police found in his home came from paychecks and a loan from a family member to pay for his daughter's braces, and produced a notarized letter confirming the loan. The Presentence Report—noting the emotional trauma defendant's incarceration would have on Gonzalez' family and the fact that he provided the primary financial support for his immediate family as well as his disabled father and his grandmother—found that these were mitigating factors that might warrant departure.

## DISCUSSION

### I Waiver

 Before discussing each of the grounds for downwardly departing, we must first determine whether the prosecution is entitled to appellate review of them. Gonzalez argues that the government is not so entitled because it failed to argue in the trial court that these factors were adequately contemplated by the Sentencing Commission in formulating the Guidelines. *See United States v. Garcia–Pillado,* 898 F.2d 36, 39–40 (5th Cir.1990) (government held to have waived right to contest sentence on appeal where, despite ample opportunity to raise the matter before the district court, it failed to do so). Defendant also asserts that the United States may not challenge that court's reliance on his knowledge of the amount of cocaine involved in the transaction as a basis for departing because it assented to the reservation of his right to make that argument in the plea agreement letter. Neither of defendant's contentions has merit.

It is true that though the government responded to the sentencing court's concerns regarding the disparity between the sentence imposed on Vasquez and the one Gonzalez received, and refuted defendant's arguments regarding his limited degree of involvement, it did not contend that the grounds relied on were adequately calculated by the Sentencing Commission and therefore could not serve as the basis for a departure. But the United States did not

receive adequate notice of the possibility of departure as required by *United States v. Jagmohan,* 909 F.2d 61, 63 (2d Cir.1990). *See United States v. Cardenas,* 917 F.2d 683, 688–89 (2d Cir.1990); *United States v. Ramirez Acosta,* 895 F.2d 597, 600–01 (9th Cir.1990) (notice requirement met where all factors relied on were listed as possible grounds for departure in presentence report, unlike here where only one factor— the impact of incarceration on Gonzalez' family—was identified in the report). Because of this, the government had no opportunity to challenge the accuracy of each factor and the propriety of its use as a basis for a departure. *See Cardenas,* 917 F.2d at 689. Even though the government does not raise the notice issue on appeal as a basis for reversal, it can scarcely be penalized for failing to raise issues before the district court of which it had no notice. Hence, the government is entitled to advance these arguments on appeal.

 Nor did the government waive its right to contest the sentencing court's reliance on Gonzalez' lack of knowledge as to the specific amount of cocaine involved in the transaction. The plea agreement reserved Gonzalez' right to argue lack of knowledge, but it did not—either expressly or by implication—limit the government's ability to contest the accuracy or appropriateness of that factor. We proceed therefore to a discussion of the government's contentions.

### II Grounds for Downward Departure

The Guidelines were promulgated in part to eliminate disparity in sentencing and should not lightly be laid aside; yet sentencing remains more an art than an exact science. A district court has authority to impose a sentence outside the Guidelines when it is satisfied that certain circumstances, as a matter of law, were not adequately envisaged by the Guidelines' Commission, those circumstances are present in the case before it, and the proposed departure is a reasonable exercise of its discretion. In the instant case the decision to depart downwardly was based on four grounds: (1) the Guidelines did not ade-

quately reflect Gonzalez' actual behavior in that he came into a drug transaction not realizing it was drug related until the matter was nearly completed; (2) Gonzalez' incarceration would result in the destruction of the family whose strength and stability primarily depended on him; (3) his knowledge of the specific amount of drugs involved in the deal was not clearly demonstrated; and (4) there was a discrepancy between the Guidelines sentences of Gonzalez and Marizol Vasquez, while the sentencing court perceived no marked distinction in their behavior.

### 1. Gonzalez' Actual Behavior

■ The first factor cited by the sentencing court is that the Sentencing Guidelines do not adequately reflect Gonzalez' actual behavior. We review the question of whether a particular factor is a permissible ground for departure *de novo*, *see United States v. Lara*, 905 F.2d 599, 602 (2d Cir. 1990), and the factual determination that the factor at issue was present under a clearly erroneous standard. *See Jagmohan*, 909 F.2d at 64.

A sentence may be imposed outside the applicable Guidelines range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or *to a degree*, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b) (emphasis added). Thus, though limited participation in the offense is a factor taken into consideration by the Sentencing Commission, *see* U.S.S.G. § 3B1.2, the sentencing court may depart based on that factor if it finds "that 'unusual circumstances' ... warrant [a downward] departure from the pertinent guideline provision." *United States v. Palta*, 880 F.2d 636, 640 (2d Cir.1989); *see also* U.S.S.G. § 5K2.0 ("[C]ourt may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines ..., if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.").

The "unusual circumstance" found by the district court was that Gonzalez only realized he was involved in a drug transaction "shortly before the incident" and that his participation was "limited." The presentence report states that Gonzalez maintained he was not aware that he was involved in a drug transaction until shortly before the meeting in the Sheraton Garage took place and he had no knowledge of the full details of the transaction. At the plea proceeding he testified that he did not become aware that he was involved in a drug transaction until the cash contents of the box in his car were displayed to the informant and undercover agent. Additionally, the presentence report stated that Alba advised the probation officer he deliberately did not disclose all the details of the transaction to Gonzalez. The district judge was entitled to credit this proof and his reliance on it was not clearly erroneous.

The sentencing court did not abuse its discretion when it downwardly departed based in part on the extremely limited nature of Gonzalez' involvement in the transaction. *See United States v. Barone*, 913 F.2d 46, 50 (2d Cir.1990); *cf., United States v. McElroy*, 910 F.2d 1016, 1027 (2d Cir. 1990) (application of Guidelines to established facts will not be overturned absent abuse of discretion). The district court must be afforded reasonable flexibility in imposing a sentence so long as its authority is exercised according to the statutory standard. *See United States v. Joyner*, 924 F.2d 454, 459–60 (2d Cir.1991). As noted, a departure based on a factor envisioned by the Commission is permissible if the degree to which it was contemplated was inadequate, 18 U.S.C. § 3553(b), and the record sufficiently supports the conclusion that Gonzalez' participation in the transaction was extremely limited.

Of course if defendant's conduct is paradigmatic—that is, the same as an example listed in the Guidelines Commentary for a mitigating role in the offense—then the sentencing court's discretionary hands are tied, because the Guidelines plainly will have considered this precise sort of conduct in setting the sentencing range. We do not find that to be the case here. Gonzalez had no knowledge of the transaction or the contents of the package he transported un-

til he was in the Sheraton parking garage where he was arrested. He had no stake in the transaction. His role did not rise to the level of that of an offloader or a one-time courier. *See* U.S.S.G. § 3B1.2, application note 2. In short, this record presents an instance in which the district court was entitled to conclude that the defendant's role in the offense was less than minimal and accordingly to depart further downward from the Guidelines range.

### 2. *Impact on Gonzalez' Family*

 The next factor relied on was the impact incarceration of Gonzalez would have on his family. Family ties and responsibilities are not "ordinarily relevant in determining whether a sentence should be outside the guidelines," U.S.S.G. § 5H1.6; but if the circumstances related to those factors are extraordinary, a sentencing court is not precluded as a matter of law from considering them in making a downward departure. *See United States v. Sharpsteen*, 913 F.2d 59, 63 (2d Cir.1990).

As with Gonzalez' limited participation in the offense, here the record amply supports the conclusion that his family circumstances were extraordinary. Appellee has been married for 12 years. He, his wife and their two daughters, aged four and 11, live with his disabled father—who depends on Gonzalez to help him get in and out of his wheelchair—and his paternal grandmother. He had long-standing employment at the time of the events which gave rise to this case. He worked two jobs to maintain his family's economic well-being, and was aptly described as a man who works hard to provide for his family. Clearly his is a close-knit family whose stability depends on Gonzalez' continued presence.

The sentencing court found that Gonzalez' incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit and concluded that these circumstances were sufficiently extraordinary in this case to support a downward departure. Under all these circumstances its determination to depart downwardly relying on Gonzalez' family circumstances is not an abuse of its

discretion. *See Barone*, 913 F.2d at 50; *see also United States v. Big Crow*, 898 F.2d 1326, 1331–32 (8th Cir.1990) (downward departure based on employment history, community ties, and successful support of family despite economic hardship of living on Indian Reservation, was not an abuse of discretion); *United States v. Handy*, 752 F.Supp. 561 (E.D.N.Y.1990) (downward departure based on impact longer period of incarceration would have on children of convicted single mother); *United States v. Gonzalez*, 2 Fed.Sent.R. 81, 1989 WL 86021 (S.D.N.Y.1989) (extraordinary circumstances meriting downward departure for mother of three where father already in prison and mother's participation in the crime peripheral).

### 3. *Knowledge of Amount of Drugs Involved*

 The district court also relied on its finding that Gonzalez' knowledge of the specific amount of drugs involved in the transaction was not as clearly demonstrated as required by the Sentencing Guidelines. This is not actually a separate factor; rather it relates to Gonzalez' minimal involvement—a factor explicitly relied on by the sentencing court. When stripped to its essentials, it simply constitutes another way of stating that Gonzalez was unaware of the transaction's details and that his knowledge was meager. Hence, this factor was improperly cited as an independent reason for downward departure.

 By itself our conclusion does not necessitate a remand for redetermination of the quantity of cocaine attributed to Gonzalez, and a recalculation of his base offense level, as the government contends. The quantity of cocaine attributed to Gonzalez for purposes of calculating the base offense level—two kilograms—was not in dispute. That it erred by basing its decision to depart downwardly on Gonzalez' diminished knowledge of the quantity of drugs involved does not change its undisputed finding regarding the quantity of drugs attributable to defendant. Therefore, a redetermination of the amount of

cocaine to be attributed to Gonzalez is not in order.

### 4. Sentence Disparity Between Co-defendants

■ The final factor relied on was the disparity between the sentence imposed on co-defendant Marizol Vasquez and that which the Guidelines would have imposed on Gonzalez, despite the trial court's belief that Gonzalez was no more culpable than she was. We have recently held that disparity of sentences between co-defendants may not properly serve as a reason for departure from the Guidelines. See Joyner, 924 F.2d at 459–61. Reliance on this factor was accordingly improper.

### III Gonzalez' Sentence

■ We have before us both proper and improper bases for downward departure. Other circuits are not of one mind as to whether a reviewing court—when faced with appropriate and inappropriate grounds for departure—may, considering only the proper grounds, decide the issue, or whether it must remand for resentencing. Several circuits have held that a remand is required, see, e.g., United States v. Singleton, 917 F.2d 411, 412 (9th Cir.1990); United States v. Dean, 908 F.2d 1491, 1496 (10th Cir.1990); cf. United States v. Michael, 894 F.2d 1457, 1460 (5th Cir.1990), reasoning that an appellate court has "no way to determine whether any portion of the sentence was based upon consideration of the improper factors." United States v. Nuno–Para, 877 F.2d 1409, 1414 (9th Cir. 1989).

Other circuits, not following the remand route, weigh whether, reviewing only the proper factors, the magnitude of the departure was justified, see United States v. Franklin, 902 F.2d 501, 508–09 (7th Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); United States v. Rodriguez, 882 F.2d 1059, 1068 (6th Cir. 1989), cert. denied, —— U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); see also United States v. Hummer, 916 F.2d 186, 195 n. 8 (4th Cir.1990) (stating, in dicta, that the better approach is to affirm a

departure "so long as one or more factors exist that properly support departure and the amount of departure is reasonable"), cert. denied, —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991), primarily because such approach is most consistent with the "reasonableness" standard of departure under 18 U.S.C. § 3742(e)(3). Hummer, 916 F.2d at 195 n. 8; see also Franklin, 902 F.2d at 508–09.

Although not having had occasion to decide this issue squarely, we have used both approaches. In Jagmohan, the sentencing court relied on three factors to justify downwardly departing, only two of which were upheld on appeal. See 909 F.2d at 65. Considering only the appropriate factors, we sustained the downward departure as reasonable. In Joyner, the district court relied on two factors to depart downwardly. On appeal, we believed one of the factors was impermissibly relied upon and remanded for resentencing with instructions that the impermissible factor not be calculated. See 924 F.2d at 459–61.

■ In reconciling these cases, the adoption of a per se rule seems imprudent. Instead, we hold the reviewing court should decide on a case-by-case basis whether remand is required. The approach taken in Jagmohan is feasible for several reasons. First, we agree with those circuits that have held that reviewing the departure considering only the suitable factors is consistent with the reasonableness standard of review of departures mandated by 18 U.S.C. § 3742(e)(3); that is, where a departure based on proper grounds is reasonable, the recitation of improper grounds along with the proper ones generally should not change the result. See Franklin, 902 F.2d at 508–09. We also believe weighing the reasonableness rather than remanding preserves scarce judicial resources. For example, if we automatically remand when faced with a departure based on both proper and improper grounds and the trial court imposes the same sentence, there is a distinct possibility that the sentence will be appealed again, presenting us with the same question we faced the first time: can the departure be

justified by the proper grounds? There will be cases where remanding obviously would be the better approach, such as where the improperly relied on factors were of such significance that the sentencing court should reconsider the sentence, *see, e.g., Joyner,* 924 F.2d at 462, or where it expressed serious doubts of its own in deciding to depart.

▌ We believe the case at hand falls into the latter category. During the sentencing proceedings, Judge Dorsey expressed his "considerable doubt" as to whether or not he should depart downward from the applicable Guidelines range. In light of this doubt, we are not confident that he would have exercised his discretion to depart to the same extent without relying on the factors we have determined were improperly considered. When the panel believes the proposed departure is unreasonable, considering only the appropriate factors, it may include directions to the district court to that effect in its remand. *See Joyner,* 924 F.2d at 462 (remand coupled with statement that departure was questionable). Here, whether the sentence imposed was reasonable or not presents a close question that we do not reach or decide. We must therefore reverse and remand in order for the district judge to determine in the exercise of his discretion whether and to what extent he should downwardly depart.

## CONCLUSION

The judgment of the district court is accordingly reversed and remanded for re-sentencing.