50 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jimmy Edwards HOBBS, Defendant-Appellant.
 No. 94-5530.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1995.
 
 Before: JONES and MILBURN, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Jimmy Edward Hobbs appeals his jury conviction and sentence for conspiracy to possess and for possession with intent to distribute marijuana. For the reasons stated below, we affirm the decision of the district court.
 
 I.
 
 2
 On November 10, 1992, a two-count indictment charging conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. Sec. 846 and possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841 was returned against Defendant Jimmy Hobbs, Raymond Bureau, Alvin Hobbs (Defendant's father), and Maxine Short. Ms. Short was later dismissed from the case; Bureau and Alvin Hobbs pled guilty. Defendant Hobbs was convicted on both counts after a jury trial, was sentenced to 24 months imprisonment on each count to run concurrently, and was ordered to pay a $50 special assessment on each count. Hobbs then appealed to this court.
 
 
 3
 The events resulting in the criminal charges against Hobbs include the following. On August 1992, Special Agent Joe Copeland of the Tennessee Bureau of Investigation learned from K.W. Fuller, a confidential informant, that there was a group of people in Grundy County interested in selling large amounts of marijuana. Agent Copeland then set up a meeting between Agent Eric Patton, Fuller, and one of the alleged group, Alvin Hobbs; the meeting took place at a Waffle House ("Waffle House # 1") in Tiftonia, just outside of Chattanooga, on August 29, 1992. Agent Patton was wearing a body bug, which enabled Agent Copeland to hear and record the conversation at a distance. In this first meeting the three negotiated a purchase of thirty pounds of marijuana. Defendant Hobbs was not present at this meeting.
 
 
 4
 Later that day there was a second meeting between Fuller, Defendant Hobbs, and Alvin Hobbs in which Fuller wore a body bug, and these three individuals further discussed the 30-pound marijuana purchase. Due to a failure to agree on a place for the transfer of the marijuana, the transaction was deferred to a later date.
 
 
 5
 On November 2, 1992, Agent Copeland, Fuller, and Alvin Hobbs met in order to set the time and place for the purchase of now 100 pounds of marijuana. In a telephone conversation later that day, the amount was reduced to 75 pounds, and Agent Copeland was instructed to meet at Waffle House # 1 the next day in order to carry out the transaction.
 
 
 6
 On November 3, 1992, Defendant Hobbs drove his father to Waffle House # 1. Agent Copeland arrived thereafter, Alvin Hobbs got in Copeland's car, and Defendant Hobbs drove off. Alvin Hobbs and Agent Copeland waited about 30-45 minutes for Raymond Bureau, who was to supply the marijuana. When he arrived, all three went to a room at a nearby Days Inn where they completed the drug transaction.
 
 
 7
 Meanwhile, Police Officer Brent Clayton of the Cleveland, Tennessee Police Department was conducting surveillance from the parking lot of the Holiday Inn across the street from the Days Inn where the drug transaction ultimately occurred. Officer Clayton testified that after Defendant Hobbs dropped off his father at Waffle House # 1, Jimmy Hobbs pulled into a spot at the Holiday Inn parking lot, stayed a few minutes, then left the lot and drove into the parking lot of the waffle house adjacent to the Holiday Inn ("Waffle House # 2"). There, he backed into a parking space such that the car was facing the Days Inn where the drug transaction was going to take place. Defendant Hobbs remained in the car at this location, until he was arrested by officers after the marijuana transaction was completed. At trial, the government argued that the evidence showed that Hobbs was acting as a lookout for the drug transaction.
 
 
 8
 The officers searched Defendant Hobbs' vehicle and found a piece of paper in the pocket of a coat in the vehicle. Officer Clayton testified that the numerical figures written on the paper were calculations relating to the marijuana transaction. At trial, defense counsel read a stipulation by a handwriting expert that the written numerical figures on the piece of paper were "highly probably not written by Jimmy Hobbs," but were instead probably "penned by an older person ... on top of an unsteady surface, likely in a moving vehicle ... [and] likely under the influence of alcohol or substance abuse."
 
 II.
 
 9
 On appeal Hobbs raises two issues. First, he argues that the trial court's admission of taped conversations involving himself, an alleged co-conspirator, and a government informant, violated both the Confrontation Clause and the hearsay rule, amounting to reversible error. Second, he argues that the district court erred in denying his motion for acquittal. We find no error.
 
 
 10
 At trial, during the testimony of Agent Copeland, the government sought to introduce the taped conversations of August 29, 1992. Defense counsel objected on the grounds that such admission of the confidential informant's statements violated the hearsay rule and the Confrontation Clause.
 
 
 11
 The district court ruled that the statements made by the confidential informant on the tapes were not hearsay because they were not being offered to prove the truth of those statements, but instead were being offered for "the purpose of placing the conversations of the other participants in the conversations, and in particular in the second transcript, second meeting of August 29th, also the statements of the Defendant, in proper context." J.A. at 39. At the close of the government's case, the district court gave the following limiting instruction to the jury:
 
 
 12
 Ladies and gentlemen ... [i]n conjunction with these tape recordings that you've heard, you are instructed that you are not to consider the confidential informant's statements in those recordings for their truthfulness. Rather, the confidential informant's statements have been admitted to assist you in understanding the recorded statements of the Defendant and the other people who participated in those conversations. The confidential informant's statements and remarks in the recordings or on the tapes have been admitted for the limited purpose of assisting you in placing these statements and other witnesses or participants in those conversations in context.
 
 
 13
 J.A. at 70.
 
 
 14
 "A number of circuits have embraced the evidentiary rule that the entirety of tape recorded conversations between a defendant and a third party informant are admissible where the defendant's statements are offered as verbal acts or admissions and the third party's statements are necessary to place the defendant's statements in proper context." United States v. Davis, 890 F.2d 1373, 1380 (7th Cir.1989) (citing United States v. Gutierrez-Chavez, 842 F.2d 77, 81 (5th Cir.1988); United States v. Jordan, 810 F.2d 262, 264 (D.C.Cir.), cert. denied, 481 U.S. 1032 (1987); United States v. Price, 792 F.2d 994, 996-97 (11th Cir.1986)), cert. denied, 493 U.S. 1092 (1990); United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir.1985)); see also United States v. Castro-Lara, 970 F.2d 976, 981 (1st Cir.1992) ("[T]estimony which is not offered to prove the truth of an out-of-court statement, but is offered instead for the more limited purpose of providing relevant context or background, is not considered hearsay."), cert. denied, 113 S.Ct. 2935 (1993).
 
 
 15
 This circuit has held that testimony based upon an out-of-court statement of an unnamed individual was not hearsay and was admissible when the statement was being offered for the limited purpose of explaining how and why a government investigation was undertaken. United States v. Martin, 897 F.2d 1368, 1371 (6th Cir.1990).
 
 
 16
 Furthermore, where out-of-court statements are not offered for their content, there is no need to test the credibility of the out-of-court declarant as to their substance, and thus the Confrontation Clause is not offended. Id. at 1372; United States v. Barone, 913 F.2d 46, 49 (2d Cir.1990) (where tape-recorded statements of informant offered not for their own truth, but to provide context for defendant's own admissions in tape recording of conversation between defendant and informant, there was no Confrontation Clause violation); Davis, 890 F.2d at 1380 (same); United States v. Murray, 618 F.2d 892, 900 (2d Cir.1980) (same).
 
 
 17
 The Seventh Circuit has held that "[i]n the absence of any limiting instruction directing the jurors to use [the confidential informant's] statements only to put [defendants'] statements in context, [the confidential informant's] statements must be taken as hearsay testimony admitted against defendants which they had a right to impeach, both under the Confrontation Clause and under Rule 806." United States v. Burton, 937 F.2d 324, 327-28 (7th Cir.1991). Where such a limiting instruction has been given, however, the courts have found that there is no violation of either the Confrontation Clause or the hearsay rules. See, e.g., id.; United States v. McClain, 934 F.2d 822, 832-33 (7th Cir.1991) (limiting instruction that statements to be considered as providing context only both preserved statements as non-hearsay and eliminated any Confrontation Clause concerns); Lee v. McCaughtry, 892 F.2d 1318, 1325-26 (7th Cir.) (limiting instruction by trial judge was appropriate way to limit jury's use of evidence in manner consistent with Confrontation Clause), cert. denied, 497 U.S. 1006 (1990); Barone, 913 F.2d at 49; United States v. Lemonakis, 485 F.2d 941, 950-51 (D.C.Cir.1973) (limiting instruction "sufficient to preserve the fair trial that Bruton's invocation of the Confrontation Clause was designed to protect"), cert. denied, 415 U.S. 989 (1974).
 
 
 18
 In light of these holdings, we find that the district court appropriately admitted the taped conversations at trial and appropriately instructed the jury as to the limited use of that evidence.
 
 
 19
 Defendant Hobbs next argues that there was not sufficient evidence at trial to allow the jury to convict him, and thus the trial court erred in denying his motion for acquittal. In reviewing a challenge to the sufficiency of the evidence, this court must uphold the jury verdict if, after viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see United States v. Overmyer, 867 F.2d 937, 938 (6th Cir.), cert. denied, 493 U.S. 813 (1989); United States v. Walton, 908 F.2d 1289, 1294 (6th Cir.), cert. denied, 498 U.S. 990 (1990). "[T]o establish a drug conspiracy pursuant to 21 U.S.C. Sec. 846, the government must prove 'that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it.' " United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991) (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)). We find that the government made this showing via the first and second tape-recorded meetings on August 29, 1992.
 
 
 20
 Hobbs asserts, however, that after the second meeting, he withdrew from the conspiracy. This court has recognized withdrawal from a conspiracy as an affirmative defense. United States v. Chambers, 944 F.2d 1253, 1265 (6th Cir.1991). This court, however, has set forth the following:
 
 
 21
 'Mere cessation of activity in furtherance of an illegal conspiracy does not necessarily constitute withdrawal. The defendant must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his conspirators that he has abandoned the enterprise and its goals.'
 
 
 22
 Id. (quoting United States v. Steele, 685 F.2d 793, 803-04 (3d Cir.), cert. denied, 459 U.S. 908 (1982)). Hobbs made no such showing at trial. Consequently, we hold that the district court did not err in denying Hobbs' motion for acquittal because there was sufficient evidence to allow the case to go to the jury.
 
 III.
 
 23
 For the reasons stated above, we affirm the decision of the district court.
 
 
 
 *
 The Honorable Avern Cohn, United States District Court Judge for the Eastern District of Michigan, sitting by designation