42 F.3d 1387
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
William WRIGHT, Jr., Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellant,
v.
William WRIGHT, Jr., Defendant-Appellee.
 Nos. 93-5827, 93-5849.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 26, 1994.
Decided: December 7, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry C. Morgan, Jr., District Judge. (CR-93-30-N)
 ARGUED: William P. Robinson, Jr., Robinson, Madison, Fulton & Anderson, Norfolk, VA, for appellant. Alan Mark Salsbury, Asst. U.S. Atty., Norfolk, VA, for appellee. ON BRIEF: Helen F. Fahey, U.S. Atty., Norfolk, VA, for appellee.
 E.D.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before LUTTIG and WILLIAMS, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant and cross-appellee William Wright, Jr., pled guilty to fourteen counts of illegally distributing and dispensing controlled substances in violation of 21 U.S.C. Sec. 841(a)(1) (1988), eight counts of furnishing false information in drug prescriptions in violation of 21 U.S.C.A. Sec. 843(a)(4)(A) (West Supp.1993), and one count for forfeiture of proceeds derived from commission of the above offenses pursuant to 21 U.S.C.A. Sec. 853 (West Supp.1993). The district court sentenced Wright to thirty months imprisonment on each count, to run concurrently. Wright and the Government both appeal this sentence. Wright contends that the district court erred by calculating his offense level based upon the gross weight of the controlled substances he was convicted of distributing rather than their active ingredient weight. See U.S.S.G. Sec. 2D1.1(c) (Nov.1992). The Government contends that the district court erred in granting a downward departure based upon the cumulative impact of factors which, considered individually would not warrant a departure. See 18 U.S.C.A. Sec. 3553(b) (West Supp.1993). For the reasons discussed below, we affirm in part and reverse and remand in part for resentencing in accordance with this opinion.
 
 I.
 
 2
 On eight different dates between January and April of 1992, Wright, a general practitioner in Norfolk, Virginia, received visits in his office from Barbara Carr, a patient. During these visits, Wright issued a total of forty-two prescriptions for narcotic painkillers: thirty-two for Vicodin[1] (totalling 2,455 tablets); five for Tylox[2] (totalling 150 capsules); and five for Percodan[3] (totalling 245 tablets).
 
 
 3
 Wright was unaware at the time of these visits that Barbara Carr was part of an undercover investigation involving the Virginia State Police, the Drug Enforcement Administration, and the Chesapeake Police Department.[4] Carr, by agreement with the investigating officials, wore a transmitter to record her conversations with Wright in his office. She also received $2,215.00 from the State Police to purchase prescriptions in amounts ranging from $160.00 to $400.00. On one of these visits, Carr was accompanied by her sister, Cynthia Battle. On two of the visits, a Chesapeake Police detective, who posed as Carr's cousin using the name Susan Norman, joined her. On the other five visits, Carr entered the doctor's office alone.
 
 
 4
 None of the office visits were scheduled appointments. In most instances, Carr was allowed to see Wright after giving an envelope containing a note and a portion of the money given to her by the State Police to the receptionist for Wright. The note indicated that there was more money if Wright would see her. Once admitted, Carr would give the remaining portion of the money directly to Wright, who normally put it in his shirt pocket.
 
 
 5
 Carr recorded all conversations inside Wright's office, except for her last visit when the transmitter malfunctioned. The recorded conversations reflect that during each visit, Wright wrote multiple prescriptions for controlled substances without legitimate medical reason. Wright backdated or postdated 25 of the 42 total prescriptions. On two other prescriptions, he only filled in the year, leaving the month and day blank. Ten of the prescriptions issued to Carr were written in the name of persons who were not in the office at the time, including Carr's sister, Cynthia Battle, and her aunt, Edna Norman. In some instances, after Carr complained that she had paid for more prescriptions than he had supplied, Wright wrote out additional prescriptions.
 
 
 6
 Wright never performed a physical examination of Carr during any of the eight office visits. Furthermore, during one visit, he advised Carr that it was safer to fill her prescriptions at a small pharmacy, where they were less likely to be challenged, than at a large chain which might inquire about their validity.
 
 
 7
 Wright did not document any of these office visits or prescriptions in the patient files of Barbara Carr, Cynthia Battle, Susan Norman or Edna Norman. In addition, Wright failed to record any payments that he received from Carr in the office's financial journals or patient ledger account cards where they would normally be recorded if they had been received for legitimate office visits and medical treatment.
 
 
 8
 On February 25, 1993, the grand jury returned a twenty-three count indictment against Wright.[5] On June 30, 1993, after the Government had presented its case and the court denied Wright's motion for judgment of acquittal, Wright changed his pleas of not guilty to guilty on Counts one through twenty-three. Following a hearing in which the court accepted Wright's new plea and reviewed the evidence against him, the court entered a finding of guilty as charged on Counts 1 through 23.
 
 
 9
 In the presentence report, the probation officer calculated a base offense level of twenty-four. In arriving at this result, the probation officer converted the gross weight of the whole drug tablets and capsules containing the controlled substances into an equivalent weight of marijuana under the Drug Equivalency Tables, and then referred to the Drug Quantity Table to obtain the combined offense level.
 
 
 10
 At Wright's sentencing hearing on September 27, 1993, the district court adopted the Probation Officer's base offense level calculation of twenty-four, a two level enhancement for use of a special skill under U.S.S.G. Sec. 3B1.3, and a two level downward adjustment for acceptance of responsibility. The court further acknowledged the fifty-one to sixty-three month period of custody recommended in the presentencing report as specified by the sentencing table. However, contrary to the Probation Officer's recommendation and over the Government's objection, the district court granted Wright a downward departure of six levels on the basis of the "cumulative impact" of a number of factors. These factors were articulated both orally from the bench and in a written "Statement of Reasons for Departure" incorporated in the sentencing order.
 
 
 11
 By departing downward six offense levels, the district court effectively reduced the sentencing guideline range applicable to Wright from fifty-one to sixty-three months (offense level 24) to twenty-seven to thirty-three months (offense level 18). The district court then sentenced Wright to a thirty-month term of imprisonment followed by a three-year term of supervised release. The court additionally imposed the special conditions that Wright participate in substance abuse and mental health programs and that Wright notify his probation officer prior to applying to the board of Medicine for reinstatement of his medical license. Finally, the district court imposed a special assessment totalling $1,100.
 
 
 12
 Wright appeals the district court's calculation of his base offense level based upon the gross weight of the drugs and the Government appeals the downward departure. We address each in turn.
 
 II.
 
 13
 We review the proper method of calculating drug weight as a legal question subject to de novo review. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir.1989).
 
 
 14
 Base offense levels for drug offenses are determined from the Drug Quantity Table following U.S.S.G. Sec. 2D1.1. In a footnote to the Drug Quantity Table, the Guidelines state:
 
 
 15
 Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.
 
 
 16
 U.S.S.G. Sec. 2D1.1. We have held that this gross weight methodology applies to pharmaceuticals. United States v. Meitinger, 901 F.2d 27, 29 (4th Cir.), cert. denied, 498 U.S. 985 (1990); United States v. Bayerle, 898 F.2d 28, 31-32 (4th Cir.), cert. denied, 498 U.S. 819 (1990). Appellant, nevertheless, contends that because it is easy to determine the precise active weight of a controlled substance, basing his sentence on the gross weight of the pharmaceuticals he prescribed violates his due process rights. This argument was addressed and foreclosed, however, in United States v. Bayerle, 898 F.2d at 31-32. We see no reason to depart from this well established rule. Thus, as to the district court's sentence of Wright based upon the gross weight calculation of controlled substances, we affirm.
 
 III.
 
 17
 We review departures from the applicable sentencing guidelines range "under a multi-part test of 'reasonableness.' " United States v. Weddle, 30 F.3d 532, 536 (4th Cir.1994); see also United States v. Hummer, 916 F.2d 186, 192 (4th Cir.1990), cert. denied, 499 U.S. 970 (1991). In accordance with this test, we first examine de novo the specific reasons cited by the district court in support of its sentence outside the Guidelines range to determine whether those reasons encompass factors " 'not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' " Hummer, 916 F.2d at 192 (quoting 18 U.S.C.A. Sec. 3553(b)).
 
 
 18
 The district court articulated several grounds for its decision to depart downward: 1) Wright suffered collateral punishment in the suspension of his medical license and the corresponding loss of his earning capacity; 2) Wright made positive contributions to his community, as evidenced by the considerable support from his peers and patients as expressed in numerous letters to the district court; 3) while engaged in the illegal conduct charged, Wright bore the considerable burden of caring for his family and suffered from significant stress as he attempted to establish himself professionally in a new community; 4) Wright was forty years of age and had no prior criminal history with the exception of minor traffic offenses; and, 5) Wright did not rely on the proceeds of his criminal activity.[6] The district court further noted that although such circumstances are "ordinarily not factors justifying a downward departure, the cumulative impact of such circumstances is supportive of a downward departure based upon collateral punishment and an exemplary criminal record." (J.A. 59.)
 
 
 19
 Wright contends that the factors cited above by the district court, in addition to the aberrant nature of Wright's conduct, justify a downward departure. (App. Brief at 8.) We disagree. The lawful structure within which federal courts may depart from the Sentencing Guidelines is set forth at 18 U.S.C. Sec. 3553(b):
 
 
 20
 The court shall impose a sentence of the kind, and within the range, referred to in sub-section (a)(4) unless the Court finds there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guideline that should result in a sentence different than that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.
 
 
 21
 18 U.S.C.A. Sec. 3553(b) (emphasis added). Thus, the district court may depart downward only if it discerns an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. United States v. Bell, 974 F.2d 537, 538 (4th Cir.1992).
 
 
 22
 As to the district court's consideration of the "collateral punishment" of Wright's loss of his medical license and corresponding earning capacity, Congress and the Commission explicitly intended that a defendant's socio-economic status not be considered in sentencing. 28 U.S.C.A. Sec. 994(d) (West 1993); U.S.S.G. Sec. 5H1.10. United States v. Graham, 946 F.2d 19, 22 (4th Cir.1991); United States v. Rutana, 932 F.2d 1155, 1158-59 (6th Cir.1991). Rather, the lower court must "fashion an appropriate sentence within the applicable guidelines ... without regard to the defendant's affluence or socio-economic status." Graham, 946 F.2d at 22. Furthermore, the Guidelines, as directed by statute, explicitly reflect the general inappropriateness of considering the "education, vocational skills, employment record, family ties and responsibilities, and community ties" of the defendant. 28 U.S.C.A. Sec. 994(e) (West 1993); U.S.S.G. Ch.5, Pt.H, intro. comment. See United States v. McHan, 920 F.2d 244, 247 (4th Cir.1990); United States v. Goff, 907 F.2d 1441, 1446 (4th Cir.1990). Moreover, the Guidelines take into account the age, U.S.S.G. Sec. 5H1.1, United States v. Summers, 893 F.2d 63, 69 (4th Cir.1990), employment related contributions, and prior good works of defendants, Sec. 5H1.11, United States v. DeMasi, 1994 U.S.App. LEXIS * 53 (1st Cir. Oct. 26, 1994), in addition to criminal history and criminal livelihood. U.S.S.G. Secs. 5H1.8, 5H1.9, and Ch.4. Thus, the Guidelines have already accounted for these factors and have discounted their relevance.
 
 
 23
 Although the district court recognized that its reasons for making a downward departure in this instance "are ordinarily not factors justifying a downward departure," it nevertheless did so on the basis of their "cumulative impact." However, a cumulation of factors that individually would not support a downward departure adds" nothing significant to the calculus." Goff, 907 F.2d at 1447.[7] Otherwise stated, the result, viewing these factors as a totality, must be the same were each factor considered individually. Thus, the district court erred in permitting a downward departure of six offense levels based upon the cumulation of factors analysis discussed above.
 
 
 24
 Finally, as to Wright's contention that his conduct constituted a single act of aberrant behavior, "[t]he [United States Sentencing] Commission, of course, has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." U.S.S.G. Sec. 1A4(d), p. 5. Thus, the character of an offense as a "single act of aberrant behavior" could be a mitigating circumstance not addressed by the Guidelines. United States v. Scheffer, 896 F.2d 842, 846 n. 4 (4th Cir.), cert. denied, 498 U.S. 838, and 498 U.S. 968 (1990). However, the record in the court below reflects that on eight different occasions between January 1992 and April 1992, Wright sold forty-two prescriptions to a known addict without medical necessity. (J.A. 146.) We, thus, reject Wright's characterization of this series of criminal acts as a single act of aberrant behavior and decline his invitation to uphold the district court's downward departure on this basis.
 
 
 25
 Therefore, as to the downward departure issue, we reverse.
 
 CONCLUSION
 
 26
 Accordingly, the district court's sentencing order is affirmed with the exception of its downward departure. On that point, we reverse and remand to the district court for resentencing consistent with this opinion.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 Vicodin is a brand name for hydrocodone bitartrate and acetaminophen tablets. Physician's Desk Reference 1143 (48th ed.1994)
 
 
 [2]
 Tylox is a brand name for oxycodone and acetaminophen capsules. Physician's Desk Reference 1366 (48th ed.1994)
 
 
 [3]
 Percodan is a brand name for oxycodone and aspirin capsules. Physician's Desk Reference 1366 (48th ed.1994)
 
 
 [4]
 Carr, an acknowledged drug addict, had been arrested in November 1991 by Chesapeake police on a prescription fraud charge, at which time she told authorities that she had been purchasing prescriptions, without any legitimate medical purpose, from Wright, since October 1989. An undercover investigation of Wright was initiated on the basis of this information to determine if, in fact, he was issuing prescriptions without a legitimate medical purpose
 
 
 [5]
 Counts 1, 3, 4, 7, 10, 13, 16, and 19 charged Wright with the distribution and dispensation of Vicodin, a narcotic controlled substance, by prescription in violation of 21 U.S.C. Sec. 841(a)(1). Counts 2, 6, 9, 12, 15, 18, 21, and 22 charged Wright with making false and fraudulent statements in the preparation of controlled substances and prescriptions in violation of 21 U.S.C. Sec. 843(a)(4)(A). Counts 5, 8, and 14 charged Wright with the distribution and dispensation of oxycodone (Percodan), a narcotic controlled substance, by prescription in violation of 21 U.S.C. Sec. 841(a)(1). Counts 11, 17, and 20 charged Wright with the distribution and dispensation of oxycodone (Tylox), a narcotic controlled substance, by prescription in violation of 21 U.S.C. Sec. 841(a)(1). Count 23 provided for the forfeiture of all proceeds derived from the preparation and dispensation of prescriptions in the first twenty-two counts of the indictment pursuant to 21 U.S.C. Sec. 853
 
 
 [6]
 The court incorporated in the sentencing order a written "Statement of Reasons for Departure":
 STATEMENT OF REASONS FOR DEPARTURE
 The Court has granted the defendant's motion for a downward departure to offense level 18. The Court finds that the defendant has suffered collateral punishment in the suspension of his medical license and the corresponding loss of his earning capacity. The Court also finds that defendant has made positive contributions to his community, as evidenced in part by the considerable support from his peers and patients which was expressed to this Court in numerous letters. The Court also finds that defendant, while engaged in the illegal conduct charged, was under a considerable burden in caring for his family, and was under significant stress as he attempted to establish himself professionally in a new community. The Court also considers that the defendant at 40 years of age has no prior criminal history except for minor traffic offenses, and that he did not rely on the proceeds of his criminal activity.
 The Court finds that the policy of the guidelines encourages consideration of collateral punishment as well as an exceptionally favorable criminal history. While the age of a defendant has not been recognized as a factor, the Court finds that a person 40 years of age with only three minor traffic offenses is entitled to extra consideration.
 While such circumstances as contributions to the community, support of his peers and patients, a lack of dependence upon the fruits of his criminal activities and exceptionally difficult family responsibilities are ordinarily not factors justifying a downward departure, the cumulative impact of such circumstances is supportive of a downward departure based upon collateral punishment and an exemplary criminal record. Accordingly, the Court FINDS that the policies and standards of the guidelines permit a downward departure in this particular sentence and a twenty-five percent (25%) or 6 step reduction from an offense level of twenty-four (24) to an offense level of eighteen (18) is in conformity with the structure and intent of the guidelines.
 (J.A. 59.)
 
 
 [7]
 See also United States v. Minicone, 26 F.3d 297, 301 (2nd Cir.) (viewing the factors cumulatively adds nothing to the calculus), cert. denied, 63 U.S.L.W. 3293 (U.S. Oct. 11, 1994); United States v. Pozzy, 902 F.2d 133, 138 (1st Cir.) ("Nor do we approve a 'totality of the circumstances' approach to sentencing under the guidelines."), cert. denied, 498 U.S. 943 (1990); United States v. Rosen, 896 F.2d 789, 792 (3rd Cir.1990) (combination of factors presented by defendant did not provide grounds for departure)