UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles William McHAN,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Charles William McHAN,
Defendant–Appellee.

Nos. 89–5057, 89–5101.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1990.

Decided Dec. 6, 1990.

---

Mark Jeffery Kadish, Law Firm of Mark J. Kadish, argued, Atlanta, Ga., for defendant-appellant.

Nina Swift Goodman, U.S. Dept. of Justice, argued, Washington, D.C. (Thomas J. Ashcraft, U.S. Atty., Max O. Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., on brief), for plaintiff-appellee.

Before SPROUSE, CHAPMAN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

Charles McHan pled guilty in the United States District Court for the Western District of North Carolina to the offense of conspiracy to possess with intent to distribute 200 pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846. After denying McHan's motion to withdraw his plea, the district court sentenced him to fifty-two months in custody with a $100,000 fine. In so doing, the court departed downward from McHan's calculated offense level under the United States Sentencing Guidelines in recognition of his strong community ties and substantial charitable contributions. McHan asserts that the district court erred in denying his motion to withdraw his plea, and the government cross-appeals the court's downward departure from the Guidelines. We affirm the district court's denial of McHan's motion to withdraw his plea. We remand the case for resentencing, however, because we do not believe the Guidelines permit preferential treatment of prosperous drug dealers on the basis of their charitable contributions or community relations.

I.

On May 3, 1988, Charles McHan was arrested after handing an undercover government agent $100,000 in cash in exchange for 200 pounds of marijuana. That transaction was a small trial run for what McHan hoped would become a regular marijuana purchase of 2000 pounds a month. A grand jury indicted McHan and three confederates on charges of conspiracy to possess with intent to distribute and conspiracy to distribute in excess of 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846. In September 1988, McHan pled guilty to the lesser included offense of conspiracy to possess with intent to distribute 200 pounds of marijuana. After conducting a hearing in accordance with Fed.R.Crim.P. 11, the court entered a verdict of guilty.

Three months later, McHan filed a motion to withdraw his guilty plea. He claimed that he learned only after he had pleaded guilty that the government planned to bring a continuing criminal enterprise (CCE) charge against him, and that his guilty plea could be used as a predicate

offense of a CCE charge. McHan asserted that although his attorneys may have been aware of the government's plans, they had not informed him of the possibility of future charges. He claimed that if he had known of them, he would not have pleaded guilty. In January 1989, the district court held a hearing on McHan's motion, at which McHan and his former attorneys testified. The court ruled that McHan had not shown a fair and just reason for withdrawing his plea as required under Fed.R. Crim.P. 32(d) and that the government would be prejudiced if he were allowed to withdraw the plea.

On March 13, 1989, McHan was sentenced under the United States Sentencing Guidelines. The presentence report had recommended that McHan's base offense level be increased by four levels because he was "an organizer and leader of extensive criminal activity," that he not receive a two-level reduction for acceptance of responsibility, and that the court depart upward from the Guidelines because McHan's involvement in large-scale drug operations for several years was not adequately accounted for in his criminal history record. In response to the presentence report, McHan submitted a report by the National Center on Institutions and Alternatives, a non-profit organization, that argued for a downward departure from the Guidelines because of McHan's work history, his family ties and responsibilities, and his extensive contributions to the town of Murphy, North Carolina, through his real estate development company and bank. The district court increased McHan's base offense level by two for being an organizer of the offense, refused to grant a two-level reduction for acceptance of responsibility, and then departed downward by three levels "for matters that Mr. McHan has done in a positive stance in his community and in his past life." Based on the resulting offense level, the court sentenced McHan to fifty-two months in custody and fined him $100,-000.

McHan now appeals, claiming that the district court erred in denying his motion to withdraw his guilty plea. The United States cross-appeals the court's sentencing determination and maintains that the downward departure was erroneous.

## II.

McHan argues that the court abused its discretion in not permitting him to withdraw his guilty plea three months after it was entered. He claims that he never would have agreed to plead guilty had his attorneys made clear to him that the government could use the plea against him as a predicate offense in a future CCE case. He further urges that under Federal Rule of Criminal Procedure 32(d), courts should "freely grant" motions to withdraw pleas so long as they are filed before sentencing.

We cannot agree. The 1983 amendment to Fed.R.Crim.P. 32(d) adopts the view that guilty pleas are not simply "tentative" (advisory committee note), and requires a showing by the defendant of a "fair and just reason" before withdrawal of a properly entered plea will be allowed. Here appellant has failed to make such a showing. The district court apparently credited the testimony of McHan's attorneys, who stated clearly that they had informed him that the government was continuing to investigate him and might bring some additional charges, although it is less clear that they explained the particulars of a CCE charge.

■ Any failure of McHan's attorneys to explore the CCE charge, however, does not require a withdrawal of the plea. The use of McHan's plea as a predicate offense would only begin to help fulfill the government's "heavy burden of proof" in a CCE case. *United States v. Butler*, 885 F.2d 195, 198 (4th Cir.1989). A future CCE prosecution would require the government to prove that McHan engaged in a continuing series of felony violations of federal narcotics laws "in concert with five or more other persons with respect to whom [he] occupie[d] a position of organizer, a supervisory position, or any other position of management" and from which he derived substantial income or resources. 21 U.S.C. § 848(c); *see also Butler*, 885 F.2d at 198 (continuing series must be three or more

related violations). Because a CCE prosecution requires the government to prove so many additional elements and "does not definitely or immediately or automatically result from a guilty plea" to a narcotics offense, *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1367 (4th Cir.1973), any failure of counsel to inform as to a speculative CCE prosecution did not render the plea involuntary. In *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir.1989), this court observed that "[a] conviction or guilty plea may have many collateral consequences that will be adverse to a defendant" and held that failure to inform a client of possible deportation did not require withdrawal of the plea under Fed.R. Crim.P. 32. Similarly, the failure to advise of a possible collateral consequence here does not require that the plea be rescinded.

Further, we cannot conclude, in light of the overwhelming evidence against McHan, that there was any reasonable possibility that, had he known of a potential CCE prosecution, "he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)). McHan derived substantial advantages from his agreement, including being able to plead to a lesser included offense and to avoid additional charges in Texas where the arrest took place. In sum, McHan knew the terms of his plea bargain, he knew that the investigation of him was ongoing, and he knew further that the government had not agreed, as it had with his co-defendant Cunningham, to refrain from bringing additional charges in return for his cooperation. The district court did not abuse its discretion in declining to permit McHan to withdraw his plea.

### III.

The government cross-appeals the district court's downward departure from the Sentencing Guidelines. The court cited "matters that Mr. McHan has done in a positive stance in his community and in his past life" to justify decreasing McHan's base offense level by three. The United States argues that this reasoning violates the intent of the Guidelines that sentencing should be based on the offense committed and not the characteristics of the offender.

We agree. Not only are the above personal factors ordinarily irrelevant in sentencing determinations, but to depart downward because a successful drug dealer has made charitable contributions to his community is to distort the purpose of the Guidelines.

One of Congress' primary purposes in establishing the Guidelines was to reduce sentencing disparities and to rest sentences upon the offense committed, not upon the offender. *United States v. Reed*, 882 F.2d 147, 151 (5th Cir.1989). This is clear not only from 28 U.S.C. § 994(e), which instructed the Sentencing Committee to "assure that the guidelines and policy statements ... reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant," but also from the Guidelines themselves, which base sentencing upon the offense committed and the defendant's criminal history. Furthermore, of the fifteen grounds for departure listed in § 5K2.0, p.s., et seq., not a single one looks to characteristics of the defendant: ten factors examine the specific criminal conduct and the resulting harm, and five relate to the defendant's mental capacity or motive at the time of the conduct. United States Sentencing Commission, *Guidelines Manual*, § 5K2.0, p.s., et seq. (Nov.1990) [hereinafter U.S.S.G.]. The Guidelines clearly eschew consideration of personal characteristics in their attempt to relate sentences to a defendant's actual criminal conduct.

McHan nevertheless argues that his real estate company and his bank have contributed a great deal to Murphy, North Carolina, and that he has substantial support in that community. He points to numerous letters written by citizens of Murphy on his behalf, to land given the Cherokee County School District, and to money used to purchase air conditioning units for the Murphy Elementary School. Applying the two-

prong test in this circuit for assessing departures from the Guidelines, McHan maintains under the first prong that the Sentencing Commission did not adequately consider such mitigating factors in formulating the Guidelines, and asserts under the second prong that his charitable acts reasonably justify a downward departure. *See United States v. Van Dyke*, 895 F.2d 984, 986 (4th Cir.1990); *United States v. Summers*, 893 F.2d 63 (4th Cir.1990); 18 U.S.C. § 3553(b).

This argument fails for several reasons. First, § 5H1 of the Guidelines specifically discusses the weight to be accorded both a defendant's community ties and his socioeconomic status, the latter a factor bearing some correlation to the amount of a defendant's charitable donations. Socio-economic status is flatly "not relevant" to sentencing, U.S.S.G. § 5H1.10, p.s., and community ties are "not ordinarily relevant" but may be considered when probation is an option under the Guidelines. U.S.S.G. § 5H1.6, p.s. The Commission did not fail to consider the factors that McHan advances; the Commission contemplated them and deemed them ordinarily irrelevant to sentencing. Thus, McHan's contributions to Murphy through his real estate development company and his bank are not to be considered in determining his sentence. *See United States v. Bolden*, 889 F.2d 1336, 1339–40 (4th Cir.1989).

█ Even if the court could consider such circumstances, to apply them in this case would be plainly inappropriate. The indictment charged McHan with conspiring to purchase 2000 pounds of marijuana a month in addition to actually purchasing 200 pounds at $510 per pound. These figures anticipate proposed monthly drug purchases of over one million dollars. The alleged source of the charitable contributions is not dispositive for purposes of a downward departure in McHan's sentence; to state otherwise would make the sentencing hearing resemble a forfeiture proceeding. Nevertheless, it would not be surprising if some of the money that McHan used in his real estate and banking ventures, both pillars of his prominence in the community, had questionable origins.

It would be ironic if the judicial system were to reward McHan with a lower sentence because he was a successful drug dealer rather than an unsuccessful one. Such an approach to sentencing would create perverse incentives for those involved in criminal enterprises. Moreover, to allow any affluent offender to point to the good his money has performed and to receive a downward departure from the calculated offense level on that basis is to make a mockery of the Guidelines. Such accommodation suggests that a successful criminal defendant need only write out a few checks to charities and then indignantly demand that his sentence be reduced. The very idea of such purchases of lower sentences is unsavory, and suggests that society can always be bought off, even by those whose criminal misconduct has shown contempt for its well-being. This court has recently disallowed downward departures with respect to disadvantaged defendants convicted of narcotics offenses, *see United States v. Brand*, 907 F.2d 31 (4th Cir.1990), and we are not disposed to adopt a double standard for the more powerful and affluent in the drug community.

The "matters that Mr. McHan has done in a positive stance in his community" are not to be considered under the Guidelines. The district court erred in departing downward from the calculated offense level on that basis. We vacate the court's sentence and remand with directions to impose a sentence within the range mandated by the Guidelines.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.