UNITED STATES of America,
Plaintiff–Appellant,

v.

George R. BELL, Defendant–Appellee.

No. 91–5370.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1992.

Decided Sept. 4, 1992.

As Amended Oct. 27, 1992.

Gregory Welsh, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., on the brief) for plaintiff-appellant.

C. Michael Walls, Garner & Walls, Laurel, Md., argued (Jean A. Garner, Garner & Walls, on the brief) for defendant-appellee.

Before WILKINSON and NIEMEYER, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.

OPINION

WILKINSON, Circuit Judge:

George Bell pleaded guilty to sexual exploitation of children in violation of 18 U.S.C. § 2251 and was sentenced under the United States Sentencing Guidelines. The district court calculated Bell's sentencing range under the Guidelines at 87–108 months, but then granted Bell's motion for a downward departure—based on the detrimental effect a lengthy incarceration would have on his family—and sentenced him to 12 months in prison. We vacate the sentence and remand for resentencing within the range of 87–108 months. This court has repeatedly rejected downward departures based on a defendant's family responsibilities, and Bell has failed to distinguish his situation from those cases.

I.

In August, 1990, a grand jury for the District of Maryland indicted George Bell on five counts of sexual exploitation of children. Bell pleaded guilty to count one, which charged him with using persons under the age of eighteen for the purpose of producing visual depictions of sexually ex-

plicit conduct and with transporting those videos in interstate commerce. The conduct in question occurred during a camping trip in Gettysburg, Pennsylvania, where Bell had taken his daughter (age 13) and three daughters of a family friend (ages 12, 8 and 7). During that trip Bell set up his video camera inside a pop-up camper, positioning the camera so that he could record the girls changing their clothes. He subsequently instructed the girls to take off their clothes, sit in a certain location, and "examine" themselves for ticks by spreading their vaginas. At one point Bell repositioned the camera so that the girls' genitals would be the direct focus of the recording, and he repeatedly instructed the girls while they "checked for ticks."

At the end of the camping trip, Bell returned home with the girls and the videotape to Salisbury, Maryland. Several months later, Montgomery County police were called to an elementary school in Rockville, Maryland, to investigate a complaint of child sexual abuse. A seven year old female student told police detectives that she had been taken by "Uncle George" to his residence in Salisbury, where he had taken photographs of her in the nude. Further investigation revealed that "Uncle George" was George Bell, and police obtained a warrant to search Bell's home. During the ensuing search police seized a number of videotapes containing scenes of young girls posing in the nude under Bell's direction. One of those tapes included the scenes of the girls "checking for ticks" in the camper at Gettysburg.

Bell entered his guilty plea in April of 1991, and the probation officer prepared a presentence report. That report calculated Bell's offense level at 28 and criminal history category at III under the Guidelines, which yielded a sentencing range of 97–121 months. The district court granted two downward departures from this range. First, the court set Bell's criminal history category at II, based on the judgment that there was "little or no likelihood of recidi-

vism." This departure lowered the applicable sentencing range to 87–108 months. Second, the court departed down to an offense level of 12 on the ground that an extended prison term would interfere with Bell's ability to provide for his wife and three children. This second departure lowered the sentencing range to 12–18 months, and the district court sentenced Bell to 12 months.

The government appeals from the second of the two downward departures.[*]

## II.

In granting the downward departure at issue, the district court focused on the destructive impact an extended prison term would have on Bell's family. The court emphasized that Bell had been a member of a "stable family unit for a period of eighteen years," and noted that Mrs. Bell had "recently been laid off from a job that would not adequately have supported this family in any event." In addition, the court asserted that Bell's children needed him "for guidance, family life," and financial support. In short, the court concluded that an extended period of incarceration would lead to the destruction of the family.

■■■ We cannot quarrel with the district court's assessment of the regrettable consequences that might follow this or any other prison term. At the same time, however, we cannot permit such considerations to be used as a basis for a departure from the sentences imposed by the Guidelines. Downward departures are permitted only in the rare case where the defendant identifies a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). As to the circumstance at issue here, the Sentencing Commission has expressly stated that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be

---

[*] In noting that only the second of the two departures is at issue on appeal, we in no way suggest that the ground for the first downward departure in the criminal history category, i.e., that

there was "little or no likelihood of recidivism," represented a correct application of the Guidelines.

outside the guidelines." U.S.S.G. § 5H1.6. Thus, this circuit has held that in order to justify a departure on the basis of family responsibilities a defendant must show that his situation is somehow "extraordinary." *United States v. Brand,* 907 F.2d 31, 33 (4th Cir.1990); *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990).

■ Circuit precedent does not permit the departure in this case. We have previously held that even a single mother in sole custody of her children does not assert an "extraordinary" family situation:

> A sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children. It is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes.... [Defendant's] situation, though unfortunate, is simply not out of the ordinary.

*Brand,* 907 F.2d at 33. *See also Goff,* 907 F.2d at 1446. Bell's circumstances are even less "extraordinary" than that of a single mother—he is the father of a traditional two-parent family. Bell has "shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts spousal and parental relationships," *United States v. Daly,* 883 F.2d 313, 319 (4th Cir.1989), and that simply is not a sufficient basis for a departure. Indeed, if we were to endorse the departure in this case while rejecting a departure in the case of a single mother we would risk the introduction of gender or class bias into the Guidelines and would undermine Congress' primary purpose of achieving uniformity by "rest[ing] sentences upon the offense committed, not upon the offender." *United States v. McHan,* 920 F.2d 244, 247–48 (4th Cir.1990) (downward departure for a drug offender's community ties would distort the Guidelines' goal of uniformity and would result in a double standard for the more affluent).

### III.

In sum, the Sentencing Guidelines consider the sexual abuse of young children to be a serious offense, and courts are not empowered through this sort of departure to second guess that judgment. For the above reasons, we vacate the sentence imposed by the district court and remand for resentencing. The applicable sentencing range on remand is 87–108 months.

**VACATED AND REMANDED WITH INSTRUCTIONS.**

STAMP, District Judge, dissenting.

I respectfully dissent.

While the Sentencing Commission has stated, as noted by the majority, that "[f]amily ties and responsibilities and community ties are not *ordinarily* relevant in determining whether a sentence should be outside the guidelines", U.S.S.G. § 5H1.6 (emphasis added), this admonition has been and must be taken to mean that there may well be situations in which a district court could, under extraordinary circumstances, properly depart from the applicable guidelines in sentencing. Indeed, this is the express direction of this Court in both *United States v. Brand,* 907 F.2d 31, 33 (4th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990), and *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990). The *Brand* Court, while finding that no departure was warranted under the particular facts presented in that case, stated: "Although there doubtless are circumstances in which unique family responsibilities might justify a downward departure, these circumstances are not present here." *Brand,* 907 F.2d at 33.

In the present case, the district court, following a thorough hearing at the time of Bell's sentencing at which it heard the testimony of five witnesses concluded that, based upon its consideration of the evidence, a departure below the guideline range was in order.

Title 18, United States Code, Section 3742 provides, in part:

> ... The court of appeals shall give due regard to the opportunity of the district

**540**

court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e)(4) (1992).

The district court determined that, in accordance with the principles set forth by the Second Circuit in *United States v. Alba*, 933 F.2d 1117 (2d Cir.1991), the negative impact of a long prison sentence upon the family unit could be grounds for a downward departure under the Sentencing Guidelines. While the district court readily conceded that *Alba* is not controlling upon this circuit, the court concluded that neither the Sentencing Guidelines nor this circuit's case law prohibit considering family impact in extraordinary circumstances in determining whether to depart from the Sentencing Guidelines. The district court made a finding, based upon a careful review of the particular circumstances presented to it, including the testimony at the sentencing hearing, that Bell's imprisonment under the usual Guideline range might well result in the destruction of an otherwise strong family unit. The district court then concluded that those circumstances were sufficiently extraordinary to permit a downward departure. That finding, in my opinion, was not clearly erroneous.[1] Consequently, I would vote to affirm the sentence of the district court.[2]

---

1. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

2. I also believe that the district court, following *United States v. Hummer*, 916 F.2d 186 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991), properly applied the balancing test to be used in determining the extent of the departure and that, therefore, the court did not abuse its discretion in determining the amount of the departure.