**UNITED STATES of America**

v.

**William SPEDDEN.**

**Cr. No. 95–497–A.**

United States District Court, E.D. Virginia.

March 1, 1996.

Morris R. Parker, Assistant United States Attorney, Alexandria, Virginia, for Plaintiff.

Barry R. Diamond, Alexandria, Virginia, for Defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the Court for the sentencing of Defendant William Spedden who pled guilty to a one-count Criminal Information charging wire fraud, in violation of Title 18 U.S.C. § 1343. Both the Government and the Presentence Report agree that Defendant's Criminal History Category is I and his adjusted offense level is 13, which sets Defendant's United States Sentencing Guideline ("Guidelines") range at 12 to 18 months.

The Defendant objects to the offense level 13 and requests this Court depart from the Guidelines. The Defendant argues that the circumstances of this case are present to such an unusual degree and distinguish his case from the "heartland" cases covered by the Guidelines.

## I.

From September 1, 1994 to October 30, 1995, Defendant was employed by Office Depot, Incorporated ("Office Depot"), an international office supply company with stores located throughout the United States. From September 1, 1994 through May 31, 1995, Defendant was employed as one of two assistant store managers at an Office Depot store in Alexandria, Virginia. From June 1, 1995 through October 30, 1995, Defendant was employed as the store manager of an Office Depot in Silver Spring, Maryland. Each of the two stores had approximately 30 employees, including a store manager and assistant store managers. The store manager was responsible for supervising all the employees at the store.

The Statement of Facts in this case evidence that from September 1, 1994 through October 30, 1995, Defendant conducted the fraudulent returns of merchandise credits for approximately $58,024.20 worth of merchandise that was neither purchased from nor returned to Defendant's place of employment, Office Depot.

A return of merchandise credit is a credit to the credit card account of a customer who returns merchandise previously purchased. In this case, Defendant issued these fraudulent return of merchandise credits to his personal mastercard account with MBNA America ("MBNA").

In order to conduct the return of merchandise credits, Defendant used computers at the Virginia and Maryland Office Depot stores to transmit information via telephone wire to Office Depot headquarters in Del Ray Beach, Florida. The transactions were then wired from Del Ray Beach, Florida to MBNA, whose corporate headquarters was located in Wilmington, Delaware.

After the Defendant would initiate the fraudulent return of merchandise credits by entering fictitious return of merchandise transactions into the store computers and then issuing the return of merchandise credit

to his personal mastercard account, he would offset these fictitious returns by entering fictitious sales of the same merchandise in to the computer. The fictitious sales appeared as if a customer actually purchased merchandise from the Office Depot store.

The Defendant would pay for various expenses and receive cash advances from his mastercard with the credits that accumulated on Defendant's personal mastercard account.

Based on the guilty plea to the one-count Criminal Information charging wire fraud, the Presentence Report computed Defendant's Guideline base offense level at 6 (six) pursuant to § 2F1.1(a), added 5 (five) levels for an amount involving more than $40,000 pursuant to § 2F1.1(b)(1)(F), added 2 (two) levels for more than minimal planning pursuant to § 2F1.1(b)(2)(A), and added 2 (two) more levels for an abuse of a position of trust pursuant § 3B1.3. Thus, the Defendant's adjusted offense level is 15. The Defendant did receive a 2 (two) level decrease for acceptance of responsibility. Consequently, at a Criminal History Category of I, the Defendant's offense level is 13 with a Guideline range of 12 to 18 months.

Presently, the Defendant is 30–years–old, married and has five dependent minor children, none of whom are older than thirteen years of age. The circumstances that Defendant argues takes his case outside the "heartland" cases covered by the Guidelines involve having two members of his immediate family who are facing life threatening illnesses. The Defendant's 29–year–old wife, Patricia Spedden, was diagnosed with ovarian cancer on one of her ovaries which led to a laparotomy in September, 1994. In May, 1995, Defendant's wife was diagnosed as having cancer in her remaining ovary. The Defendant's 9–year–old daughter was diagnosed in October, 1995 as having scleroderma, a disease which causes the hardening of the skin and joints. This exceedingly rare disease has led to necessary and attendant medical treatment at Johns Hopkins University Hospital, at the National Institutes of Health, and at the Mayo Clinic.

Essentially, the thrust of the Defendant's argument is that two potentially fatal illnesses within the Defendant's nuclear family, and the obvious consequences which flow from such an extraordinary situation, constitute such present circumstances to an unusual degree and distinguish his case from the "heartland" cases covered by the Guidelines.

## II.

The Fourth Circuit is in agreement with the federal circuit courts of appeal which have held that when a district court seeks to depart downward from the guidelines it should do so only after both the Government and the Defendant have received proper notice in order to develop a full record. *United States v. Maddox*, 48 F.3d 791, 799 (4th Cir.1995); *see also United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991); *United States v. Andruska*, 964 F.2d 640 (7th Cir.1992).

In this case, the Government filed its position with respect to Defendant's sentencing factors on February 23, 1996. The Defendant filed his response to the Government's motion and his own sentencing factors with this Court on February 28, 1996, two days before the date of his sentencing hearing, March 1, 1996. In Defendant's position with respect to sentencing factors, the issue of departure was raised for this Court to consider.

At the sentencing hearing held on March 1, 1996, the Government did not object to the Defendant raising the issue of departure two days before the sentencing hearing. The Government received the Defendant's sentencing memorandum requesting a departure and at no time objected to the timeliness of the memorandum at the sentencing hearing. Thus, the Government was on proper notice.

During the sentencing hearing, the Defendant took evidence from one witness, his wife, Patricia Spedden. Mrs. Spedden testified under oath as to the medical conditions of both herself and her 9–year–old daughter.

Mrs. Spedden testified that she was diagnosed with ovarian cancer on one of her ovaries which led to a laparotomy in September, 1994. The recuperation period lasted about six weeks, and during that time, Mrs. Spedden was unable to work. In May, 1995, Mrs. Spedden was diagnosed as having can-

cer in her remaining ovary. Mrs. Spedden testified that she has not undergone any exploratory surgery to this date due to the unresolved questions concerning her husband's criminal case. Mrs. Spedden testified that she was waiting until after her husband's sentencing date to see whether he would be able to care for the family which would permit her to undergo surgery and recuperate for a period of approximately six weeks.

As to the medical condition of the Spedden's 9–year–old daughter, Mrs. Spedden testified that in December, 1995, the 9–year–old was diagnosed with and treated for scleroderma, a disease which hardens the skin and joints. Mrs. Spedden testified that this disease is extremely "rare" in children and has led to the necessary and attendant medical treatment at Johns Hopkins University, at the National Institutes of Health, and at the Mayo Clinic. In fact, Mrs. Spedden testified that her daughter is the basis of a study being conducted on this rare disease at Johns Hopkins University. Lastly, Mrs. Spedden testified that should the scleroderma spread to the child's joints, her life expectancy as a 9–year–old would be one year or less. In comparison, an adult with scleroderma in the joints would have a life expectancy of three to five years.

The Government was given its opportunity to cross-examine Mrs. Spedden and, without any objection, simply stated it had no questions for the witness. By a preponderance of the evidence, this Court found Mrs. Spedden to be a truthful and credible witness and accepted her testimony in full.

### III.

Normally, a Court must impose a sentence of the kind and within the range specified by the Guidelines, unless: 1) the Government makes a motion for a downward departure based on substantial assistance (U.S.S.G. § 5K1.1) or; 2) the Court finds that the particular case includes an aggravating or mitigating circumstance that the Commission did not adequately consider (§ 5K2.0) (*quoting* 18 U.S.C. § 3553(b) (1988))).

If the Court departs, the Court must express "the specific reason" for departing from the applicable sentencing range. 18 U.S.C. § 3553(c)(2) (1988). *Cf.* 18 U.S.C. § 3553(c)(1) (requiring expression of "the reason" for a particular sentence within a guideline range of 24 or more months).

■ Moreover, if the Court identifies one or more aggravating or mitigating circumstances "not adequately taken into consideration," it may depart from the sentencing range only if it further determines a sentence different from the guidelines "should result." 18 U.S.C. § 3553(b). "The Court must determine whether the circumstance identified and found to exist in the particular case is of sufficient importance and magnitude to justify a departure." *United States v. Rusher,* 966 F.2d 868, 882 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992) (*citing United States v. Goff,* 907 F.2d 1441, 1445 (4th Cir.1990)).

The Fourth Circuit has construed downward departures based on family ties very narrowly. *E.g., United States v. Bell,* 974 F.2d 537, 538 (4th Cir.1992) (holding that the possible destruction of a family caused by the extended incarceration of the family's sole earner was not extraordinary).

Similarly, in *Goff, supra,* the district court departed from the guidelines based on the "future of the [defendant's] children," where the defendant had three children, aged seven, six and two, and claimed that the children would have to live with her ill mother while she was in prison.

The Fourth Circuit held that the district court had abused its discretion and cited U.S.S.G. § 5H1.6, which states that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines." *Goff,* 907 F.2d at 1446. The Court ultimately found that the defendant had shown nothing more than "that which innumerable defendants could establish: namely that the imposition of prison sentences normally disrupts ... parental relationships." *Id.*

■ However, what distinguishes Defendant Spedden's case from the "heartland" case of *Goff* and Fourth Circuit precedent on this very issue, is not that the normal, every-

day course of his parental relationship will be disturbed or strained if he is incarcerated for at least 12 months, but rather, that the actual family structure stands to be utterly decimated by the realistic possibility of the death of not one, but two immediate family members while the Defendant is incarcerated and unable to provide any normal, day-to-day parental assistance to sustain his family. *See e.g., United States v. Canoy,* 38 F.3d 893, 907 (7th Cir.1994) (Noting that case law generally has indicated that the disintegration of family life is insufficient to warrant departure, but that to warrant a departure, "courts have required a showing that the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case.").

In *United States v. Brand,* 907 F.2d 31 (4th Cir.), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990), the Fourth Circuit remanded a case back to the district court for resentencing where it found the district court had improperly departed from the guidelines based on the defendant's familial responsibilities. In *Brand,* the district court departed downwards based on the defendant's separation from her children and because the children would be placed with "blood strangers." *Id.,* at 33.

While the Fourth Circuit labeled the defendant's situation as "unfortunate," it held that it was not out of the "ordinary." *Id.* However, the Court did note that it was beyond doubt that circumstances could exist "in which unique family responsibilities might justify a downward departure." *Id.*

This Court finds that the instant case presents the rare case where such extraordinary and unique family circumstances justify a downward departure and that a sentence different from the guidelines "should result." *See* 18 U.S.C. § 3553(b). Thus, this Court is of the opinion that the cumulative nature of two extraordinary medical hardships in the Defendant's immediate family makes this a case "of sufficient importance and magnitude to justify a downward departure." *Rusher, supra,* 966 F.2d at 882.

The Introductory Commentary to U.S.S.G. Chapter 5, Part H, states that factors that are "not ordinarily relevant" to departure (such as family ties and responsibilities) "may be relevant to this determination in exceptional cases." *See* § 5K2.0. Similarly, a recent paragraph added to U.S.S.G. § 5K2.0 *Grounds for Departure* (Policy Statement) states:

> An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

Even though the Commentary to § 5K2.0 states that such a case will be "extremely rare," the Commission clearly contemplated the existence of extraordinary cases. More importantly, the Commission implicitly acknowledges that the district courts are left with the responsibility of making fact-sensitive determinations which extraordinary cases turn on.

There are many examples of extraordinary situations where district court departures have withstood attack and been affirmed on appeal on facts less compelling than the case at bar. *See e.g., United States v. One Star,* 9 F.3d 60, 61 (8th Cir.1993 (combination of factors for Indian defendant—strong family ties, employment record, community support); *United States v. Johnson,* 964 F.2d 124, 128–30 (2d Cir.1992) (sole responsibility for raising four young children); *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir. 1991) (12-year marriage, two children, living with disabled, dependent father and grandmother); and *United States v. Pena,* 930 F.2d 1486, 1494–95 (9th Cir.1991) (single parent of infant and sole supporter of 16-year-old daughter and daughter's infant).

In the present case, Defendant's wife of almost 13 years, is presently employed making only $16,800 per year. Mrs. Spedden has been reluctant to undergo necessary surgery for fear that her husband will not be able to provide the basic necessities for the family

while she is unable to work. The Defendant's 9–year–old daughter continues to be treated for scleroderma and her immediate needs require transportation to and from doctor appointments.

The Defendant has represented to this Court that he has received a firm job offer of employment conditioned upon his commencement of employment on April 1, 1996. The Defendant has already undertaken steps to make full restitution in this case by making restitution payments of $100 per month. This restitution schedule was agreed to prior to Defendant's present job opportunity which will pay him $48,000 per year. Such a salary would enable Defendant to pay a higher restitution payment each month while providing for the pressing financial needs of his family.

Accordingly, this Court finds that the medical hardships of Defendant's family constitute the extraordinarily rare case to such an unusual degree that a downward departure is justified. Based on the mitigating circumstances set out in this opinion, the Court will sentence the Defendant to 12 months, and depart from the Guidelines by allowing the Defendant to serve all twelve in home confinement, such cost to be borne by the Defendant.

The Court finds that the Defendant has a wife, five dependent children, permanent employment commencing April 1, 1996, and the ability to pay full restitution. Further, the Court finds that the victim in this case lost $58,024.20 and that the Defendant is able to pay full restitution with $3,000.00 due within 60 days and $100.00 per month thereafter until full restitution is paid. The Defendant is also ordered to serve three years supervised release, pay a $50.00 special assessment fee, and abide by the conditions of release as more fully set out in the judgment in his criminal case.[1]

The Court finds that fashioning the sentence in this manner takes into account the important statutory purposes of sentencing.

By serving twelve months in home confinement, this sentence will enable Defendant to provide the basic necessities his family will surely need and it will allow his wife to undergo necessary surgery and have adequate time to recuperate. Moreover, this sentence will ensure that Defendant will be gainfully employed and eminently able to pay any and all restitution amounts, as well as financially contributing to the maintenance and well being of his family.

Where, as here, a rare case of extraordinary circumstances of such importance and of significant magnitude are present, departure is the just remedy. The circumstances present in the case at bar truly present the extraordinary case that, because of the cumulative nature of the medical hardships facing the Defendant and his family, distinguish this case from the "heartland" cases covered by the Guidelines.

An appropriate judgment in a criminal case shall issue.

---

[1] In the alternative, should the Bureau of Prisons not accept the Defendant's sentence of 12 months of home confinement, this Court would depart from the Guidelines and decrease Defendant's adjusted offense level 2 (two) levels. This would place Defendant's offense level at 11, Criminal Category level I, with a Guideline range of 8 to 14 months.

The Court would sentence the Defendant to serve an 8 (eight) month split-sentence, with four months of incarceration and the remaining four months in home confinement.