UNITED STATES of America,
Plaintiff,

v.

John VELEZ, Defendant.

No. CR.A. 01–396–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 9, 2002.

Kevin DiGregory, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Mark John Petrovich, Martin, Arif, Petrovich & Walsh, Springfield, VA, for Defendant.

### MEMORANDUM ORDER

LEE, District Judge.

THIS MATTER is before the Court on sentencing for Defendant John Velez and Defendant's Motion for Downward Departure from the applicable sentencing guidelines. Velez pled guilty to one count of conspiracy to commit extortion in violation of 18 U.S.C. § 1951. The issues before the Court are: (1) whether a downward departure based on exceptional family circumstances is warranted when Defendant is the sole provider for his family, his wife has recently been diagnosed with cervical cancer requiring a biopsy and subsequent chemotherapy treatments, and she suffers from clinical depression and post-traumatic stress disorder stemming from the tragic

death of the couple's ten-month old child which prevents her from leaving the home to work; (2) whether a downward departure based on aberrant behavior is warranted when Defendant has no criminal history and was a minimal participant in the conspiracy in question; and (3) whether a downward departure is warranted based on the totality of the circumstances.

At sentencing the Court calculated the applicable United States Sentencing Guideline and determined that Defendant's offense level is 19, which will be adjusted for a 2 point reduction for Defendant's minor role in the offense and adjusted for a 2 point increase because there were two victims of the extortion. At Defendant's sentencing hearing this Court granted Defendant's motion for a 4 point reduction in offense level based on his minimal role in the conspiracy and denied Defendant's objection to the 2 level increase based on two victims. Thus, the Court concludes after adjusting for the 4 point reduction, with a Criminal History Category of I, Defendant's offense level total is 17, setting his applicable United States Sentencing Guideline range at 24 to 30 months.

Defendant's motion for downward departure is based on (1) family ties under U.S.S.G. § 5H1.6 and (2) aberrant behavior under U.S.S.G. § 5K2.20. In the alternative, he moves for downward departure based on the totality of the circumstances under U.S.S.G. § 5K2.0. Defendant contends that his family circumstances are exceptional and distinguish his case from the "heartland" of cases covered by the Guidelines, and that his conduct constitutes a single act of aberrant behavior.

For the reasons stated below, this Court holds that: (1) a departure from the sentencing guidelines based on Defendant's family ties and responsibilities is warranted as the extraordinary medical and financial hardships that Defendant's family faces present an exceptional scenario that takes this case out of the heartland of cases covered by the guidelines; (2) a departure from the Sentencing Guidelines based on aberrant behavior is not warranted, as Defendant's behavior does not suggest a spontaneous and seemingly thoughtless act that Defendant should not be held accountable for; and (3) a downward departure based on the totality of the circumstances is denied as moot.

## I. BACKGROUND

Defendant John Velez and three other defendants were involved in a conspiracy to extort money from Anthony Dietrich and Peter Stebbins in Prince William County, Virginia. Defendant Osvaldo Luis Figueroa was an insurance salesman who shared leased office space with Dietrich and Stebbins. The other named defendants are Amine Khoury and Michael Navarra. Figueroa was involved in a dispute with Dietrich and Stebbins over a lease he shared with them. On or about May 17, 2001, Defendants Khoury and Figueroa arranged for a meeting to take place among Dietrich, Stebbins, Figueroa, Khoury, Defendant Navarra, and Defendant Velez. The Statement of Facts incorporated into the plea agreement evidence that sometime on May 17, 2001, Khoury made Velez and Navarra aware that the purpose of the meeting with Stebbins and Dietrich was to threaten them to obtain money. Velez and Navarra agreed to participate in the meeting. Their purpose was to provide an intimidating presence. At this meeting, in the presence of the other defendants, Khoury told Stebbins and Dietrich that their rental dispute with Figueroa had caused Figueroa great distress and financial hardship. Khoury demanded that Dietrich and Stebbins pay him $350,000 within one week to make up for Figueroa's claimed losses.

Khoury threatened that bad things would happen to Stebbins and Dietrich or their family members if they failed to pay the requested sum. When Dietrich and Stebbins said they could not come up with that much cash in one week, Khoury demanded that each man give $25,000 to Figueroa within 24 hours.

On May 18, 2001, Dietrich and Stebbins withdrew monies from their bank accounts and made a payment of $10,000 toward the demand. Velez never received any money or compensation for his participation in the extortion conspiracy.

On November 20, 2001, Defendant, John Velez, and the other defendants were named in a seven-count superceding indictment charging them with Conspiracy to Commit Extortion, Extortion, and Attempted Extortion, in violation of 18 U.S.C. § 1951.[1] Velez was named in Count 1 of the Indictment charging him with Conspiracy to Commit Extortion, and in Count 2, charging him with Extortion. On January 15, 2002, Velez pled guilty to Count 1 of the Indictment charging him with Conspiracy to Commit Extortion, in violation of 18 U.S.C. § 1951. Pursuant to a written plea agreement, the Government moved to dismiss Count 2 of the Indictment in exchange for Defendant's guilty plea. Count 2 was dismissed upon the Government's motion.

Based on the guilty plea to Count 1 of the Indictment charging Conspiracy to Commit Extortion, the Presentence Report computed Defendant's Guideline base offense level at 18 pursuant to § 2B3.2(a), added 2 offense levels for an implied threat of death or bodily injury pursuant to § 2B3.2(b)(1), added 2 offense levels for an amount demanded in excess of $50,000 pursuant to §§ 2B3.2(b)(2) and 2B3.1(b)(7)(C), and subtracted 2 offense levels for Defendant's minor role in the offense pursuant to § 3B1.2(b), leaving Defendant's adjusted offense level at 20. The Defendant next received a 2 level increase in offense level pursuant to § 3D1.4 based on the circumstances that there were two victims involved in the conduct, and a three level decrease for acceptance of responsibility. Thus, with a Criminal History Category of I, and an offense level total of 19, the Guideline range was 30 to 37 months.

Defendant requested a 4 point reduction for his minimal role in the offense instead of the 2 point minor-role reduction, and objected to the 2 level increase pursuant to § 3D1.4 for 2 victims. At Defendant's sentencing hearing on April 26, 2002, this Court granted Defendant's request for a 4 point reduction based on Defendant's minimal role in the offense, and overruled his objection to the 2 level increase. Consequently, Defendant's offense level is 17 with a Guideline range of 24–30 months.

The Defendant requests that the Court depart from the Guidelines. The Defendant moves for a downward departure on the basis of family circumstances. The thrust of Defendant's argument is that the Court should depart from the Guidelines based on unique family circumstances that remove his case from the "heartland" of cases covered by the Guidelines. He also moves for departure based on aberrant behavior, and in the alternative, based on the totality of the circumstances.

---

1. All defendants were named in Counts 1 and 2 charging them with Conspiracy to Commit Extortion and Extortion. Khoury was also named in Counts 3–7 charging him with Extortion and attempted Extortion. Figueroa was also named in Counts 4–7, charging him with Extortion and Attempted Extortion. This Indictment superceded a seven-count indictment filed against Khoury and Figueroa charging them with Conspiracy to Commit Extortion, Extortion, and Attempted Extortion, all in violation of 18 U.S.C. § 1951.

## II. DISCUSSION

Defendant is 32–years–old and is married to Nikenna Velez. Since June 2001, Mr. Velez has been employed as a supervisor/dispatcher with Garcia's Trash Hauling Service, based in Triangle, Virginia. He and his wife care for four children, and Defendant is the sole provider of household income. Mrs. Velez had previously been employed, but now remains at home after the couple's ten-month old child died from sustaining injuries that resulted from the negligence of an in-home babysitter. After the incident, Mrs. Velez developed clinical depression and post traumatic stress disorder, and is afraid to leave her children in the care of others. Consequently, she cannot work outside the home as she works at home caring for her children. To make matters worse, Mrs. Velez was recently diagnosed with cervical cancer. She is 24 years of age. Mrs. Velez needs a biopsy, but has been unable to undergo the procedure because of an abnormal menstrual cycle brought about by the stress of the situation at hand. (*See* Letter of Dr. Heritage at 2.) She will also need radiation therapy and possibly chemotherapy treatments, which will have serious side effects and likely make her depression worse (*Id.*) Mrs. Velez will be unable to afford these necessary procedures if her husband loses his insurance benefits while imprisoned. (*See* Def. Exhibit A; Letter of Nikenna Velez at 1.) Additionally, the lengthy recuperation period characteristic of recovering from surgery or chemotherapy, combined with her trauma induced fear of leaving the home to work, will further hinder her ability to support her family. (*Id.*)

In support of his request for downward departure based on family circumstances, Defendant relies on several cases in which such departures have been granted in similar situations. He primarily relies on *United States v. Spedden*, a case from this Court that departed from the Guidelines based on the cumulative nature of medical hardships facing the defendant's family. *See* 917 F.Supp. 404, 408 (E.D.Va.1996).

Defendant also argues that the Court should depart from the Guidelines because his offense conduct constitutes a single act of aberrant behavior. Defendant contends that this case is sufficiently extraordinary to warrant a departure. In support of his argument, Defendant contends that he played only a minimal role in the conspiracy and has led an otherwise law-abiding life. Defendant moves alternatively for a downward departure based on the totality of the circumstances pursuant to U.S.S.G. § 5K2.0.

This Court notified the Government on April 26 that it was considering departing from the Sentencing Guidelines. *See United States v. Maddox*, 48 F.3d 791, 799 (4th Cir.1995). The Government declined the Court's invitation to brief the matter and stated that it rested on its papers. The Government recommended that the Defendant be sentenced within the guideline range, but voiced no opposition to Defendant's motion for downward departure.

### A. Downward Departure Based on Family Circumstances

#### 1. Standard of Review.

 Under the Sentencing Guidelines, a district court must ordinarily impose sentences within the range specified by the applicable guideline. *See United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir.1996). Each guideline is intended to carve out a "heartland" of cases that are representative of the circumstances and consequences of the ordinary crimes of the type to which the guideline applies. *Id.* (citing *Koon v. United States*, 518 U.S. 81, 116, 116 S.Ct. 2035, 135 L.Ed.2d 392

(1996))(holding that a district court's decision to depart in an "atypical" case is to be reviewed for abuse of discretion). A district court may only depart from the applicable guideline range if there exists "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *See* 18 U.S.C. § 3553(b). In deciding whether to depart from the Sentencing Guidelines, this Court adheres to the standard set forth in *Koon* and expounded upon in *Rybicki.*

■ *Rybicki* prescribed a five-part analysis for district courts to follow when deciding whether to depart. 96 F.3d at 757. First, the Court must determine the circumstances and consequences surrounding the offense of conviction. *See id.* Second, the Court must decide whether any of these circumstances or consequences appear "atypical" such that they potentially take the case out of the applicable guideline's heartland. *See id.* Third, the court must determine, according to the Guideline's classifications, whether the identified circumstances are a "forbidden," "encouraged," "discouraged," or "unmentioned" basis for departure. *See id.* Fourth, a finding that a factor is "forbidden" ends the inquiry, while a finding that a factor is "encouraged," "discouraged," or "unmentioned" requires further analysis. *Id.* "Encouraged" factors are usually appropriate bases for departure, whereas "discouraged" factors are "not ordinarily relevant," but may be relied upon as bases for departure in "exceptional cases." *See id.* (quoting *Koon,* 518 U.S. at 94–96, 116 S.Ct. 2035). A departure on the basis of an "unmentioned" factor is permissible only when that circumstance takes the case out of the heartland of situations addressed by the applicable guideline. *United States v. Barber,* 119 F.3d 276, 281 (4th Cir.1997). The final step in the analysis is for the Court to consider whether the circumstances considered take the case out of the applicable guideline's heartland and whether a departure from the guideline's specified range is warranted. *Id.* In making this determination, the Court compares the case to other Guidelines' cases, weighs the many facts bearing on the outcome, informed by its unique vantage point and day to day experience in criminal sentencing, and then exercises its traditional sentencing discretion. *See Koon,* 518 U.S. at 98, 116 S.Ct. 2035.

■ The Fourth Circuit has narrowly construed downward departures based on family ties. *Spedden,* 917 F.Supp. at 407. The economic hardship that a family will encounter as a result of the sole provider being imprisoned, standing alone, has been held insufficient to justify a downward departure. *See United States v. Bell,* 974 F.2d 537, 539 (4th Cir.1992) (holding that circumstances were not exceptional when defendant's wife had recently been laid off and defendant's family was dependent on his income); *United States v. Brand,* 907 F.2d 31, 33 (4th Cir.1990) (holding that situation was not extraordinary when defendant was the sole custodial parent of two minor children). In addition, the illness of family members by itself has usually been insufficient. *See Rybicki,* 96 F.3d at 759 (noting that defendant's family circumstances were not extraordinary when defendant's nine-year old son had neurological problems and defendant's wife was experiencing a period of fragile mental health); *see also United States v. Sweeting,* 213 F.3d 95 (3d Cir.2000) (holding that a departure was not warranted when defendant was a single mother of five children, and her son had Tourette's Syndrome).

### 2. Analysis.

■ Applying the *Rybicki* test, this Court finds that a downward departure is

warranted based on Defendant's exceptional family circumstances. The Court first turns to the circumstances and consequences of the offense of conviction.

Defendant's family faces a potentially devastating situation. His twenty-four year old wife, who was recently diagnosed with cervical cancer, is in need of a biopsy and chemotherapy treatments and her situation will inevitably deteriorate without her husband's support. Her clinical depression, which developed after her ten-month old child died while in the care of an in-home babysitter, will likely worsen, and she will be unable to undergo necessary medical procedures without Velez's medical insurance and financial assistance. Mrs. Velez does not work outside the home because she is afraid to leave her children in the care of others after her child's death. The surgery and treatments will take their toll both physically and mentally, and further limit her ability to return to work outside the home to support her family. Thus, the well being of Velez's four dependent children stands to be significantly injured if they are left without the financial and emotional support of their father in this time of need.

Turning to the second prong of the analysis, this Court finds that this potentially devastating medical and financial situation appears "atypical" and potentially takes the case out of the applicable guideline's heartland. *See Rybicki*, 96 F.3d at 757. Third, the identified circumstances fall into the "Family Ties and Responsibilities" section of the Guidelines and are classified as a "discouraged" basis for departure. *See id.* at 758. Thus, because family circumstances are a "discouraged" basis for departure, under the fourth prong of the *Rybicki* analysis, this Court may only depart if it determines that the case is "exceptional." *Id.; see also,* U.S.S.G. § 5H1.6 (noting that family ties and responsibilities are "not ordinarily relevant" but may be relied upon in "exceptional" cases).

This Court finds that Defendant's family circumstances are "exceptional" and that after making a "refined assessment of the many facts bearing on the outcome, comparing the case with other Guidelines cases, and using its everyday sentencing discretion," a departure from the Guidelines is warranted based on Defendant's family circumstances.

Although the Fourth Circuit has construed downward departures based on family ties narrowly, it has noted that it is beyond doubt that circumstances could exist "in which unique family responsibilities might justify a downward departure." *See Brand*, 907 F.2d at 33. This case presents such unique and "extraordinary" family circumstances. *See Spedden* 917 F.Supp. at 408 (noting that although family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, a district court may depart upon a finding that a defendants' family ties are "extraordinary").

In *Spedden*, the court found such "extraordinary circumstances" when the defendant was the sole provider for his family, his wife had ovarian cancer, and his child suffered from a rare skin disease. *Id.* The court held that the cumulative nature of medical hardships facing defendant and his family warranted a downward departure from the Sentencing Guidelines and departed accordingly. *See id.*

The circumstances in the instant case are distinguishable from the circumstances the Fourth Circuit has found "unexceptional." *See, e.g., Brand*, 907 F.2d at 33; *Bell*, 974 F.2d at 539. Here, contrary to cases like *Brand* and *Bell*, there are *combined* elements of economic hardship *and* serious illness. In *Brand*, the Court held that the defendant's family situation was not excep-

tional when the defendant was the sole custodial parent for two minor children. *See Brand,* 907 F.2d at 33. Likewise, in *Bell,* the Court held that the situation was not exceptional when defendant was the sole provider for his family. *See Bell,* 974 F.2d at 539. However, unlike this case, in *Brand* and *Bell,* there was no exceptional medical situation that exacerbated the family's potential hardship. *See id.*[2]

Indeed, the circumstances here are remarkably similar to those in *Spedden,* where the Court granted a downward departure based on extraordinary family circumstances. *See Spedden,* 917 F.Supp. at 407. First, in *Spedden,* defendant's wife had ovarian cancer, and their child suffered from scleroderma, a deadly skin disease. *Id.* at 407. Here, Defendant's wife has cervical cancer. Second, in *Spedden,* the court reasoned that by allowing the defendant to serve twelve months in home confinement, he could provide the basic necessities that his family would need while his wife underwent necessary surgery. *Id.* The circumstances here are near identical. Mrs. Velez is in need of a biopsy, and cannot have this surgery done because of the stress she is facing as a result of her husband's criminal proceedings. (*See* Def. Exhibit A; Letter of Nikenna Velez at 1.) If her husband loses his

health insurance, she will be unable to pay for her surgery and the radiation or chemotherapy treatments that she will need. (*Id.*) Moreover, the chemotherapy treatments will weaken Mrs. Velez physically, worsen the clinical depression that she developed after the recent death of her ten month old child, and render her further unable to work and support her family. (*Id.*) Third, the defendant in *Spedden* was the sole provider for five dependent children, none of whom were over the age of thirteen. *See Spedden,* 917 F.Supp. at 406. Here, Defendant is the sole provider for four dependent children, none of whom is over the age of thirteen. Finally, in *Spedden,* the court noted that defendant had secured a firm job offer of employment. *See id.* at 408. Here, the circumstances are similar as Velez would be able to keep his position at "Garcia's Inc." (*See* Def. Exhibit B; Letter from Jose Arroyo at 1.) In sum, the factors present in *Spedden,* namely the combined elements of life-threatening illness and economic hardship are present here, and this Court finds that these circumstances are "exceptional." This Court is of the opinion that a downward departure is warranted based on Defendant's exceptional family circumstances.[3]

2. This case is also distinguishable from *Rybicki,* where the district court based its downward departure on a confluence of six factors. 96 F.3d at 758. The grounds for departure were: (1) the defendant's unblemished record; (2) defendant's family circumstances; (3) defendant's recovery from alcohol abuse; (4) the court's judgment that the offense was not relatively "serious"; (5) the court's judgment that defendant's status as a police officer would make his prison term "more onerous"; and (6) the court's judgment that a felony conviction would constitute sufficient punishment. *Id.* The district court concluded that a prison term "made absolutely no sense." The Fourth Circuit rejected the departure decision and admonished the district court for combining these factors. *Id.* at 758–

59. The court then reviewed each factor individually and found that no factor individually justified a departure from the applicable guideline range. *Id.* at 759. This Court departs solely on the basis of Defendant's exceptional family circumstances. Unlike the district court in *Rybicki,* this Court does not incorporate the nature of the offense, or Defendant's prior record into its analysis. In any event, the family circumstances in *Rybicki* were not life threatening terminal illnesses like that in the instant case.

3. This Court's rationale for downward departure based on Defendant's family circumstances is not that Defendant's family circumstances decrease his culpability, but that this

## B. *Downward Departure Based on Aberrant Behavior Pursuant to U.S.S.G. § 5K2.20.*

 This Court finds that a departure based on aberrant behavior is not appropriate in this case. A single act of aberrant behavior suggests "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning because an act which occurs suddenly and is not the result of a continued reflective process is one for which the defendant may be arguably less accountable." *United States v. Glick*, 946 F.2d 335, 338 (4th Cir.1991) (citing *United States v. Carey*, 895 F.2d 318, 325 (7th Cir.1990)). Defendant was made aware that the purpose of the meeting with Stebbins and Dietrich was to threaten them to obtain money. Defendant agreed to participate in this meeting to provide an intimidating presence. These factors lead the Court to conclude that Defendant's actions were not spontaneous and thoughtless. Additionally, Defendant is no less accountable because he had no prior criminal record. Accordingly, this Court finds that a departure based on aberrant behavior is not warranted.

## C. *Downward Departure Based on The Totality of the Circumstances under U.S.S.G. § 5K2.0.*

Because this Court departs based on Defendant's family ties and responsibilities, his request for a downward departure based on the totality of the circumstances is denied as moot.

### III. *CONCLUSION*

This Court finds that this case presents one of the rare instances where exceptional family circumstances take the case out of the Guideline's heartland and warrant a downward departure.

Based on the exceptional circumstances detailed in this order, the Court will depart from the Guidelines and decrease Defendant's adjusted offense level by four levels. This places Defendant's offense level at 13, Criminal Category I, with a Guideline range of 12–18 months. The Court will sentence the Defendant to the low end of the range and allow the Defendant to serve all twelve months in home confinement. Defendant will be confined to his residence and permitted to leave only to (1) go to and from his place of work, (2) take his wife to doctor's appointments and his children to school, (3) attend such other appointments or functions approved by the probation office, and (4) attend religious services. Furthermore, Defendant shall be subject to electronic monitoring, such costs to be borne by him. By serving twelve months in home confinement, Defendant will receive punishment and severe restrictions upon his liberty. Defendant will be afforded the responsibility to assist his wife in securing necessary medical procedures. Furthermore, as he will be gainfully employed, Defendant will be able to provide for the basic necessities of his family while Mrs. Velez recuperates.

Accordingly, it is hereby ORDERED that Defendant's motion for downward departure based on family ties is GRANTED; ORDERED that Defendant's motion for downward departure based on aberrant behavior is DENIED; and ORDERED that Defendant's motion for downward departure based on the totality of the circumstances is DENIED as moot. An appropriate judgment in a criminal case shall issue.

---

Court is reluctant to wreak extraordinary destruction on Defendant's family under the circumstances. *See United States v. Johnson*, 964 F.2d 124, 129 (2d Cir.1992). The departure is not on behalf of the Defendant, but on behalf of his family. *See id.*

The Clerk is directed to forward a copy of this Order to Defendant and counsel of record.